Barry Halajian
4974 North Fresno Ave #290
Rural Route 93726
Fresno, California state
Phone: (559) 353- 4092
Plaintiff in my Private Capacity

**FILED**

JUL 2 5 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

DISTRICT COURT OF THE UNITED STATES FOR THE

EASTERN DISTRICT OF CALIFORNIA

Barry Stuart Halajian,

    Plaintiff,

    vs.

JP MORGAN CHASE BANK, NA,
Connecticut State Marshals
Commission, ELIZABETH
OSTROWSKI, in her Official and
Private Capacity, HASSET &
GEORGE, PC, JAMES TRUDELL,
and DOES 1-10,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:23  CV 1522-DJC  DB ꝓS

Case No. _____

COMPLAINT FOR:

**1.** PETITION FOR DECLARATORY
AND INJUNCTIVE RELIEF;
**2.** VIOLATION OF 42 US CODE, §§1983, 1985;
**3.** BREECH OF THE COVENANT OF GOOD
FAITH AND FAIR DEALING;
**4.** CANCELLATION OF INSTRUMENTS
RELIEF UNDER TITLE 28 USC § 1343
REQUESTED

and DEMAND FOR TRIAL
BY JURY

Plaintiff Barry Halajian, Plaintiff, complains and alleges the following:

## I. JURISDICTION AND VENUE

1. The Plaintiff is located in Fresno, in the California state as a sole proprietorship. The HASSET & GEORGE, PC, JAMES TRUDELL, Defendants, prepared a document known as the

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF

NOTICE OF PREJUDGMENT REMEDY / CLAIM FOR HEARING TO DISSOLVE OR MODIFY. The actions taken by the Defendants to seize money / personal property from Plaintiff's Bank account at JP MORGAN CHASE BANK, NA, occurred here in California. Therefore, this court is the proper jurisdiction and venue. See **Exhibit A**, NOTICE OF EX PARTE PREJUDGEMENT REMEDY / CLAIM, attached and incorporated by reference. I, the Plaintiff, hereby invoke Title 28 US Code § 1343, which provides for federal venue where the case and controversy requires injunctive relief, and the request for injunctive relief is in aid of the jurisdiction of the Federal Court. Also, the Signer of the NOTICE OF EX PARTE PREJUDGEMENT REMEDY/ CLAIM FOR HEARING TO DISSOLVE OR MODIFY is JAMES TRUDELL, an Attorney working for the law firm that represents BAY ADVANCE, LLC. The law firm is HASSET & GEORGE, P.C. As an attorney, JAMES TRUDELL is an attorney that can file documents in a court, however, he is not a judge and is not a Court Clerk. JAMES TRUDELL presents himself with a Title of Court Commissioner, but this is a title given to all attorneys in Connecticut. JAMES TRUDELL, is an attorney working for HASSETT and GEORGE, P.C, law firm, please see **Exhibit B**, a description from the Hassett and George, P.C. law firm's contact portion of their web site, attached and incorporated by reference. The actual creditor is BAY ADVANCE, LLC.

2. In 1972 the US Supreme Court, in a substantially similar case, *Lynch v. Household Finance*, 405 U.S. 538 (1972), where the Sheriff and the attorneys representing the Plaintiff, in this case, sought to seize all of the money in a Defendant's bank account using a pre-judgement garnishment, without a court order, or any notices filed and signed by the Judges or the court clerk, stated the following:

> We hold, for the reasons that follow, that **neither 1343 (3) nor 2283 warranted dismissal of the appellant's complaint**. Accordingly, we remand the case to the District Court for consideration of the remaining issues in this litigation.

3. The US Supreme Court stated further in *Lynch v. Household Finance*, supra, the following:

> **Under 28 U.S.C. 2283, a federal court may not "grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."**

**The District Court relied upon this statute as an alternative ground for the dismissal [405 U.S. 538, 553]   of the appellant's complaint. The appellant contends that 2283 is inapplicable to this case <u>because prejudgment garnishment under Conn. Gen. Stat. Rev. 52-329 22 is not a proceeding in state court</u>. We agree. [23] In Connecticut, garnishment is instituted without judicial order.** Ibid.; 1 E. Stephenson, Connecticut Civil Procedure 151 (2d ed. 1970). 24 The levy of garnishment - usually effected by a deputy sheriff - does not confer jurisdiction on state courts and may, in fact, [405 U.S. 538, 554] occur prior to commencement of an alleged creditor's suit. **Young v. Margiotta, 136 Conn. 429, 433, 71 A. 2d 924, 926. Despite the state court's control over the plaintiff's docketed case, garnishment is "distinct from and independent of that action." Potter v. Appleby, 136. Conn. 641, 643, 73 A. 2d 819, 820. The garnished property is secured, not under authority of the court, but merely in the hands of the garnishee. Conn. Gen. Stat. Rev. 52-329.** Prejudgment garnishment is thus levied and maintained without the participation of the state courts. [**Emphasis** added.]

4. As we can see the US Supreme Court has spoken about the application of Title 28 US Code, § 2283, and has stated affirmatively that the NOTICE OF EX PARTE PREJUDGEMENT REMEDY/ CLAIM that are not filed in state court are non-judicial and are not signed by a Judge or a Court Clerk. Instead, they are filed by one of the attorneys working for HASSETT & GEORGE, P.C, while acting on behalf of their client, BAY ADVANCE, LLC. I have supplied evidence that the signer of the EX PARTE PREJUDGEMENT REMEDY / CLAIM is an attorney working for the above referenced law firm, see **Exhibit B**, attached and incorporated by reference. In Connecticut, attorneys are referred to as Court Commissioners, but they are not a part of the Judiciary in Connecticut. It is similar to the fact that Attorneys in California can sign and issue subpoenas in state Court. Additionally, in most states Judges are prohibited from practicing law. As a result, it clearly established that the EX PARTE PREJUDGEMENT REMEDY/CLAIM referenced in this case is signed by an attorney.

5. As a result, the US Supreme Court has recognized that this particular type of procedure is a non-judicial procedure and is not proscribed by Title 28 US Code § 2283.

6. Plaintiff is an electrical contractor, specializing in industrial electrical wiring, and I had 12 employees at the time that the freezing of my assets was done by JP MORGAN CHASE

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -3-

BANK, NA, in violation of my rights to due process of law and equal protection of the law under the Fourteenth Amendment not to mention, a breach of their fiduciary duty to me, their customer. NOW I HAVE EIGHT EMPLOYEES, because I could not write paychecks to these employees because of the unlawful Prejudgment Garnishment, which states a claim in an amount of $85,940.00, see **Exhibit C**, page 23 of the PREJUDGEMENT CLAIM produced by the attorney for BAY ADVANCE attached, and incorporated for reference.

**CONSTRUCTIVE AND ACTUAL NOTICE TO THE DEFENDANTS: Within Fifteen Days of The Service of this Claim on the Defendants a Complaint shall be filed with the Federal Trade Commission regarding the use of deceptive business practices.**

## II. ISSUES/ STATEMENT OF THE CASE

7. BAY ADVANCE (hereinafter BA)'s agent used a bait and switch sales tactic to persuade the Plaintiff to enter into the receivables sales agreement, which was actually a disguised loan agreement. BA, a Connecticut LLC, is the lender who advanced money against my furture receivables, which were being sold to BA. Plaintiff was presented with what the Defendants describe as a forward sales agreement, attached and incorporated by reference as **Exhibit D**, which is effectively a combined receivables purchase agreement and a loan agreement. Since the purchaser of the receivables, BA requires me to pay them back regardless if my customer pays me in a timely manner or not, they are not simply buying receivables, this is a high interest loan.

8. The Contract is separated into a series of two contracts, which constitute an agreement between the parties that subdivides separate elements of the contract amongst these two agreements. The separate contracts includes the following: (a) a Forward Purchase Agreement with BA; (b) and a Security Agreement that were signed separately.

9. Shortly after Plaintiff signed their contracts, on the day this Cash Advance / High Interest Loan was initiated, he received a phone call first from the lender telling me that I was to receive a text message shortly from someone at BAY ADVANCE, LLC, which I see now was apparently some kind of convoluted request to modify the contract, see **Exhibit E**, attached and

incorporated by reference. It did not appear from the vague wording that it was a request to modify the contract since it was clearly stated in the BA contract on Page 5, Part 4: "MISCELLANEOUS" sections 4.1 "Modifications; Agreements" where it states: **"No modification, amendment, waiver or consent** of any provision of this Agreement shall be effective unless the same shall be in **writing** and **signed by BAY ADVANCE** and sections 4.3 "Notices: All Notices, requests consents, demands and other communications hereunder shall be **delivered by certified mail, return receipt requested**, to the respective parties to this Agreement to the address set forth in this agreement. Notices to BAY ADVANCE shall become effective only three days after mailing. I **later discovered** that was a pre-meditated "Bait and Switch". The cryptic wording was very confusing to decipher what changes they were making to the contract. The modification by text message was ambiguous and confusing, but it made sense to the Plaintiff to borrow the money since one of our customers was very late in sending me a $85,000 dollar payment for electrical wiring, which had been completed many weeks before.

10. Consequently, Plaintiff responded to the request, although it looked like I was going to receive the original agreed upon amount of $60,000.00, since that amount was mentioned in the text. At the time the text message was received, I was traveling on the highway the and they were very aggressive about getting me to confirm "YES" to the text message. I agreed to it by returning the text. Plaintiff was rushed into acknowledging the text message in order to receive the promised funding. This action was not a part of the original contract agreement and now it appears to be part of their premeditated "Bait and Switch" strategy and not a written agreement as stated in the contract documents. I was told that they could get me funded on the day I was asked to reply "YES" to approved the text immediately. The original contract between me and BAY ADVANCE, LLC stated on page 6 at Section 4.1 that modifications had to be in writing and that notices, which is what a request to modify is, had to be transmitted by certified mail, return receipt requested. Therefore, this was a breach of contract from the very beginning.

11. A friend of mine who looked at the contract and knows a lot about contract law, went to a law library and researched the case law in Connecticut. He discovered that the courts in Connecticut have classified some contracts as unconscionable, when they are too one sided or

oppressive. **The contract calls for the governing law to be the laws of Connecticut.** The use of high pressure tactics and application of conditions that require a party to sign without reading the contract amounts to overreaching and is unconscionable, see *Chaplain v. Chaplain,* 682 SE 2d 108 (Va Court of Appeals, 2008), whereby a husband, who had 20 million dollars in assets, asked his prospective wife from Morocco to sign a prenuptial agreement, although she spoke broken English, spoke Arabic, French and Spanish, and did not have an opportunity to show the agreement to an attorney. She was told that it was a marriage paper and to just sign it. She has no meaningful way to know and understand what she was agreeing to. The Court stated:

> **"When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."**
> *Derby,* 8 Va. App. At 28-29, 378 S.E.2d at 79 **(quoting Pomeroy,** *Equity Jurisprudence* **§ 928 (5th ed. 1941)).**
> **Here, wife's evidence of the circumstances surrounding the execution of the agreement, when viewed in her favor, bespeaks unfairness and inequality.** See id. at 28, 378 S.E.2d at 79. **Wife testified she had limited knowledge of English, that she did not and could not read it, and that the document was handed to her in husband's attorney's office, opened to the signature page.** She further testified that husband **did not at any time discuss the terms of the agreement with her nor explain it would govern the division of property in the event of a divorce.** Instead, she stated he represented the agreement to be a "marriage paper." Wife further testified that husband did not provide a copy of the agreement to her for her review or for her attorney to review, either before or after she signed it. Wife was not represented by counsel at the execution of the document.[5] In his testimony, husband denied these allegations and countered wife's testimony.[6] Which of these two conflicting versions of the facts should be believed is entirely a question of fact for the trial court to resolve on remand.
> The wife's *prima facie* case of unconscionability is, thus, rooted in the gross disparity between the value received by husband and 115*115 wife and in the inequities and oppressive circumstances surrounding the execution of the agreement. *Cf. Galloway,* 47 Va.App. at 93, 622 S.E.2d at 272
> [Emphasis added]

12. *Chaplain v. Chaplain,* supra is analogous to the case at bar, given the fact that the Plaintiff was given no time to read the modification to the contract that was in the form of a text message and was not sent certified mail, return receipt request as required under Sections 4.1 and 4.3 of the terms and conditions section of the contract as discussed above. I would never have approved the text message or went forward with the deal if I had known that they were only going to send me $42,000.00 dollars instead of the agreed amount of $60,000.00 that was called

for in the original contract. The use of an urgency strategy to get a person to agree to the text message modification to be responded to immediately is an act of overreaching, a classic bait and switch, based upon the idea that I could get funded that day if I could approve the text message immediately.  In addition, Plaintiff received an email from BAY ADVANCE, LLC regarding the funding of the receivables purchase, in which the subject at the top of the email, in bold letters is "**$60,000.  Funding For the Business**," see **Exhibit F**, attached and incorporated by reference.  Furthermore, the original contract I signed left the amount of the funding blank. Which I realized now demonstrates the premeditated intention to modify the agreement later, see **Exhibit G**, attached and incorporated by reference.  The Contract that was submitted to the court was altered, with the addition of $42,000.00 added in the column that identifies the amount of money advanced by the lender, BAY ADVANCE, LLC, see **Exhibit H**, attached and incorporated by reference.  altering a document after it is signed is a forgery.  this shows the planning and intent to reduced the amount loaned at the last minute and defraud the borrower with a much higher PAYBACK YIELD instead of rate interest rate with the confusing and unintelligible test message.

13. One of the most common cited infirmities of an unconscionable contract is when the party inducing the other party to sign uses undue influence or overreaching to obtain a signature on the contract. The text message and the email with confusing and unintelligible wording demonstrates the intention to reduce the amount without a meeting of the minds, which is overreaching.  This is an element in a divorce case when a wife used the nebulous promise to return to the marriage to obtain a signature from her estranged husband on an agreement for division of property where she retained all of the real estate in the marriage, see *Derby v. Derby*, 378 S.E.2d 74 (1989). This case is similar to the case before this court where there was overreaching applied to obtain a signature, as follows:

> "When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."
> *Derby* 8 Va.App. at 28-29, 378 S.E.2d at 79. **(quoting Pomeroy, *Equity***

*Jurisprudence* § 928 (5th ed. 1941)).
. . .**conscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances**, including the relationship and duties between the parties. A party may be free of fraud but **guilty of overreaching or oppressive conduct in securing an agreement** which is so patently unfair that courts of equity may refuse to enforce it.
**[Emphasis added.]**

14. In the case at bar BAY ADVANCE, LLC insisted that I agree to the **text message** immediately, before reading it as discussed. This is an element of surprise that makes this text message void ab-initio, since it is so vaguely worded that it appears to state that I will be receiving $60,000 dollars, although I only received $42,000.00 dollars. This surprise and trickery makes this contract procedurally unconscionable and is in violation of their own contract guidelines. This is an act that constitutes overreaching. Overreaching is defined by Merriam-Webster's on-line Dictionary as the following:

**1:** conduct that exceeds established limits (as of authority or due process) claimed that *overreaching* by the prosecution barred a retrial because of double jeopardy
**2:** the gaining of an unconscionable advantage over another especially by unfair or deceptive means if the contract was void for traditional reasons such as fraud or *overreaching—Lugassy v. Independent Fire Ins. Co.,* 636 So. 2d 1332 (1994)

15. The courts in Connecticut have adopted several tests to determine if a contract is unconscionable. One of the most often cited artifacts of an unconscionable contract is that if it is a contract that no man in his senses would ever sign. In *Smith v. Mitsubishi Motors Credit of America, Inc.,* 247 Conn. 342, (1998) the Connecticut Supreme Court stated:

**The contractual indemnity clause was contained in an automobile lease that was a form contract.**[6] **Moore claims, and the trial court held, that the clause was unenforceable because it was unconscionable. The classic definition of an unconscionable contract is one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." (Internal quotation marks omitted.)** *Neal v. Lacob,* **31 Ill. App. 3d 137, 142, 334 N.E.2d 435 (1975), quoting** *Hume v. United States,* **132 U.S. 406, 410, 10 S. Ct. 134, 33 L. Ed. 393 (1889).**
FIX THIS

16. Often times the limitations placed on the weaker party in an adhesion contract makes it unconscionable. In Plaintiff's case there are many sections of the contract that place one sided restrictions of the borrower / seller of the receivables, that is not a restriction on the lender/ buyer of receivables, as follows: (1.) Page three at Section 1.8 states that the Merchant and Guarantor indemnify and hold harmless processor, its officers, directors and shareholders against all losses,

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -8-

damages, claims, liabilities and expenses including reasonable attorney's fees incurred by Processor resulting from claims asserted by BA from monies owed to BA from Merchant, and (b) actions taken by Processor in reliance upon any fraudulent misleading or deceptive information or instructions provided by BA. [This is an unconscionable clause in the contract and is a one-sided clause that is unilateral and voids the entire contract].

17. Similar wording is on Page Three at Section 1.9 states that "In no event will BA be liable for any claims asserted by Merchant or Guarantors for any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s). In the event that these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BA's attorney's fees and expenses resulting therefrom." [This is an unconscionable clause in the contract and is a one-sided clause that is unilateral and void.] The contract is void void ab-initio from the inception since they repeatedly violated their own contract.

18. The Seller is forced to agree to waive their rights to a Jury Trial at Section 4.12 and a class action lawsuit under Section 4.13, which is an unconscionable waiver of rights to remedies that should be available to everyone. Page Three at Section 1.9 **Reliance on Terms**, states that "Section 1.1. 1.6, 1.7, 1.8 and 2.5 of this agreement are agreed to for the benefit of Merchant, BA, Processor and Merchant's bank, and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action. [This is an unconscionable clause in the contract since it allows the processor or bank to rely upon unconscionable clauses that are one-sided clauses that are unilateral and void.]

19. Page 3, Section 1.11. Sale of Receipts. This Paragraph requires the Merchant and Guarantor to waive all rights to Usury as a Defense. [This is an unconscionable clause in the contract and is a one-sided clause that is unilateral and void.] On Page 4 at **Protection 5,** the merchant can be liable for attorney's fees in any lawsuit filed by BAY ADVANCE, while BAY ADVANCE is exempt from paying attorney's fees to the merchant on Page 3 at Section 1.8, again another one sided contract. The Purchaser of the receivables under this contract has the

right to collect attorney's fees, and damages that are prohibited for the Merchant, which makes this entire matter substantively unconscionable.

20. **MODIFICATIONS MUST BE IN WRITING**. There is a clause in the contract on Page 5, at Section 4, Miscellaneous, Section 4.1 that requires modifications to be in writing. The Clause states that it must be in writing by BA, which is another unconscionable clause in the contract because it is one sided and it avoids the *legal requirement for a meeting of the minds to be an element of a contract*. This is particularly true when it is considered in the context of the text message I received notifying me of something related to the contract but the wording was so vaguely worded and ambiguous that it was difficult to understand what was being said. After I received the wire transfer of $42,000.00, I realized that BAY ADVANCE was allegedly reducing my advance of money to $42,000.00 from $60,000.00. Section 4.3 requires notices to be in writing and served by certified mail, return receipt requested. It was not clear that they were reducing the amount to $42,000.00 because both 60,000.00 and 42,000.00 without a dollar sign were in the text message, this also made the entire text message void for vagueness.

21. The above referenced text message is an act of overreaching, whereby I was asked to approve a text message, which was very ambiguous and vaguely worded. The language was indefinite and nebulous, and did not communicate with clarity that I was going to receive $42,000.00 instead of $60,000, as originally agreed. When I received the wire transfer of $42,000.00, I knew that they had reduced the amount of the cash advance. Otherwise, the text message was too vaguely worded to understand that their intention was to reduce the amount of the cash advance. It was also **not signed** by BAY ADVANCE, LLC as required under Section 4.1 of the contract. Please also take notice that I executed the contract through DOCUSIGN. I never received a counter signed copy of the contract from the originator. Furthermore, when the forged contract (which had the $42,000.00 amount filled in after the fact) was sent to the state court to institute the EX PARTE PREJUDGEMENT, the copy the sent the court was not counter signed either. Both parties have to agree, "a meeting of the minds"

22. This was both overreach and trickery because Plaintiff was told I would get the money that day if I agreed to the vaguely worded terms in the text message. This is commonly

referred to as bait and switch. Also, it is important to understand that the contract specifies at Section 4.3, on Page 5 that all notices must be presented by certified mail, return receipt requested, which was not done in the case of the text message. Therefore, the modification was void ab-initio for having violated the terms of the contract.

23. In *Family Financial Services, Inc. v. Spencer*, 41 Conn App. 754 (Conn. Appellate court 1996) the Connecticut Court of Appeals affirmed a lower court ruling that a loan was unconscionable for some of the same reasons that the Cash advance from BAY ADVANCE, LLC was unconscionable. The court stated as follows:

> "The purpose of the doctrine of unconscionability is to prevent oppression and unfair surprise. J. Calamari & J. Perillo, Contracts (3d Ed.) § 9-40." *Edart Truck Rental Corp. v. B. Swirsky & Co.*, 23 Conn. App. 137, 142, 579 A.2d 133 (1990). "As applied to real estate mortgages, *the doctrine of unconscionability draws heavily on its counterpart in the Uniform Commercial Code which, although formally limited to transactions involving personal property, furnishes a useful guide for real property transactions*. *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983); *Hamm* v. *Taylor*, 180 Conn. 491, 495, 429 A.2d 946 (1980)." *Iamartino* v. *Avallone*, supra, 2 Conn. App. 125. "As Official Comment 1 to § 2-302 of the Uniform Commercial Code suggests, `[t]he basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract.'" *Hamm* v. *Taylor*, supra, 495-96. Unconscionability is determined on a case-by-case basis, "taking into account all of the relevant facts and circumstances." *Cheshire Mortgage Service, Inc.* v. *Montes*, supra, 223 Conn. 89; *Hamm* v. *Taylor*, supra, 495-96.
> The trial court found as follows: (1) the defendant had a limited knowledge of the English language, was uneducated and did not read very well; (2) the defendant's financial situation made it apparent that she could not reasonably expect to repay the second mortgage; (3) at the closing, the defendant was not represented by an attorney and was rushed by the plaintiffs attorney to sign the documents; (4) the defendant was not informed until the last moment that, as a condition of credit, she was required to pay one year's interest in advance; and (5) there was an absence of meaningful choice on the part of the defendant.

24. The similarities here are: (1.) the fact that there was a rush to approve the text message which was an incentive because Plaintiff needed to resolve my business expenses; (2.) The proposed change to reducing the amount advanced to $42,000.00 was not clearly stated, which is analogous to someone who is semi-fluent in English in the example above; and (3.) The change to $42,000.00 although not clearly understood because of the vague wording was an element of surprise when the wire transfer of $42,000.00 arrived later in the day. Also, as discussed, there was no dollar sign in front of the number 42,000. And the word dollars did not

appear after the number 42,000, which made it vague and ambiguous. This was analogous to the case cited above, where the conditions of advancing the credit was an advanced payment of one year's interest. In my case it was a reduction of the amount advanced with the requirement to pay back the same amount of money to BAY ADVANCE, LLC. I was under the impression that I would receive $60,000.00, which would have allowed me to resolve my business expenses. The absence of choice for me was the fact that all of the companies that buy receivables use similar tactics to collect debt and have similar unconscionable terms and conditions. Had I have know this was their goal to reduce the loan amount, I would have went with another lender.

25. In another Connecticut case that was appealed to the Connecticut Court of Appeals, *Monetary Funding Group v. Pluchino*, 87 Conn. App. 401 (Conn. Appellate, 2005), the Appellate court of Connecticut affirmed the lower court ruling in a foreclosure case, that voided the foreclosure and ruled that the creditor had unclean hands and was attempting to enforce an unconscionable contract.

26. The defendant, who was not represented by counsel, contacted Paul Dwyer, the president of the plaintiff corporation. He informed Dwyer that he needed to borrow $20,000 in order to purchase the business. On April 13, 2000, the defendant executed a ninety day promissory note in favor of the plaintiff, secured by a mortgage on the defendant's unencumbered property located at 621 Washington Avenue in Bridgeport. The interest rate disclosed on the ninety-day note was 15 percent. Additional terms included a $3000 origination fee, a $400 processing fee, $937.50 in prepaid interest, $550 for attorney's fees and $112.50 for a courier fee. In short, the defendant incurred a liability of $25,000 and received a net amount from the note of $20,000. The plaintiff also indicated an annual percentage rate of 28 percent. After ninety days, the loan was to be restructured through a refinancing into an installment loan. Dwyer was aware that the defendant lacked any other means to repay the note, except for refinancing at the conclusion of the ninety days. Dwyer planned to broker the second loan for the benefit of the defendant and receive additional broker fees.

27. In January, 2001, approximately five months after the defendant had defaulted on the note, the plaintiff located a lender willing to refinance the defendant's debt. At the closing, the

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -12-

defendant, for the first time, learned that it consisted of an $80,000 loan from an entity known as InterBay Funding. According to the proposed terms of the second loan, the defendant would receive only $38,721.25 of the $80,000. A total of $28,678.31 would pay off the original note to the plaintiff, which also would receive a broker fee of $4800. In summary, considering both the original $25,000 note and the second proposed loan in the amount of $80,000, the defendant would receive in hand $58,721.25 and incur up-front costs of $21,278.75 ($5000 for the first transaction and $16,278.75 for the second transaction).

28. The defendant expressed concerns regarding the $80,000 loan. He requested time to have an attorney review the proposed arrangement, but was told that was not necessary. The defendant, already in default with respect to the original note, never executed the second loan, nor did he ever repay the original note. The plaintiff commenced a foreclosure action on April 23, 2001. In its prayer for relief, the plaintiff sought a judgment of strict foreclosure. The defendant answered the complaint and, on April 10, 2002, set forth eleven special defenses and a counterclaim alleging a CUTPA violation (Connecticut Unlawful Trade Practices Act). The lower court found that the defendant had demonstrated that the plaintiff had unclean hands and that the loan transaction was unconscionable. Additionally, it found in favor of the defendant with respect to the CUTPA counterclaim and awarded attorney's fees in the amount of $6750. The appeal followed.

29. The Case described above is similar to the case before this court because the terms and conditions were so one sided and oppressive for the borrower. The Appeals Court in Connecticut stated regarding *Monetary Funding Group v. Pluchino*, supra, the following:

> We reiterate that foreclosure is an equitable action. "Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue.... For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands.... The clean hands doctrine is applied not for the protection of the parties but for the protection of the court.... It is applied ... for the advancement of right and justice.... **The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in willful misconduct with regard to the matter in litigation....** The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citation omitted; internal quotation marks omitted.) *Ridgefield v. Eppoliti Realty Co.*, 71

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -13-

Conn.App. 321, 334-35, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

[**Emphasis** added]

30. As we can see the Court of Appeals of Connecticut affirmed that the lender in *Monetary Funding Group v. Pluchino*, supra, had unclean hands and had engaged in a series of transactions which were unconscionable. The Appeals Court stated further:

The plaintiff charged an **arbitrarily high annual percentage rate and misrepresented the rate to the defendant.** Dwyer testified that he arbitrarily charged the defendant a 15 percent origination fee in the amount of $3000, which was significantly higher than the 2 to 6 percent customarily applied to commercial loans. The plaintiff failed to conduct a "bona fide evaluation" of the defendant's ability to repay the loan, and Dwyer conceded that he was aware that repayment by the defendant was impossible, but for a subsequent refinancing. Last, the plaintiff, knowing the defendant's dire financial situation with respect to the note, did not offer him an opportunity to discuss or to evaluate the terms of the second loan. In short, the court found that the plaintiff misled the defendant, who thought he was borrowing a net of $20,000 in exchange for fees totaling $4000 to $5000 when, in reality, the terms consisted of an $80,000 loan, with the defendant receiving approximately $59,000 and the plaintiff and InterBay Funding receiving approximately $21,000 in fees.[6] The court specifically credited the defendant's testimony that Dwyer had represented that the fees would not exceed the $4000 to $5000 range. "The court finds that the reasonable implication from the evidence is that **the transaction was structured by the plaintiff for its own benefit in order for it to acquire an origination fee, a loan processing fee, as well as a finder's fee, all of which the plaintiff could not have demanded as part of a single loan transaction.**" Essentially, the court found a single transaction that required two steps to completion: first, the initial ninety day note for $20,000 and second, the refinancing that consisted of an $80,000 loan for the purpose of maximizing fees for the plaintiff. [**Emphasis** added]

31. The *Monetary Funding Group v. Pluchino*, supra case is remarkably similar to the case at bar. In Plaintiff's case the amount of money to be advanced was to be $60,000.00 dollars and the amount to be paid for the cash advance was $89,000.00 dollars. It was later changed to $42,000.00 dollars advanced, with $89,000.00 dollars paid for the cash advance. The BAY ADVANCE, LLC loan involves concealment of newly adopted terms, surprise and more oppressive interest rates at greater then 50%. This outrageous loan violates the Connecticut Unlawful Trade Practices Act. I need to obtain this courts assistance in obtaining a court order against JP MORGAN CHASE BANK, NA to order the return of the approximate value of $75,000.00 of my money immediately so that I can rebuild my electrical contracting business and recover from this financial nightmare. If I had been given the full amount of the money

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF        Page -14-

promised in the original contract with BAY ADVANCE then I never been put in this alleged position of default with BAY ADVANCE and none of this destruction to my business would have happened. I was set up to fail by BA. Otherwise, I would have been able resolve my business expenses and start to repay this amount of money owed under the original contract.

32. **WAIVER OF RIGHTS TO A JURY TRIAL AND CLASS ACTIONS**. Waiver of the merchant's rights to a trial by Jury and any class action lawsuit is an unconscionable contract as a one-sided adhesion contract. This violates the Seventh Amendment and the legal doctrine established by the US Supreme Court in *Webster v. Reid*, 52 US 437 (1851) as follows:

> By the seventh article of the amendments of the Constitution it is declared, "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." The organic law of the Territory of Iowa, by express provision and by reference, extended the laws of the United States, including the Ordinance of 1787, over the Territory, so far as they are applicable.
> **The act under which the above proceeding was had prohibited the trial by jury in matters of fact on which the suits were founded. In this respect the act was void.**
> The District Court erred in overruling the evidence offered by the defendant, to prove fraud in the judgments, executions, sheriff's sale, and sheriff's deed.
> When a judgment is brought collaterally before the court as evidence, it may be shown to be void upon its face by a want of notice to the person against whom judgment was entered, or for fraud.
> [**Emphasis** added.]

33. It should be further noted that the Northwest Ordinance of 1787, referenced above also requires a common law court in the states admitted from that region and subsequent states admitted on an equal footing with existing states are bound by the Northwest Ordinance. In *Fuentes v. Shevin*, 407 US 67 (1972), the US Supreme Court emphasized the requirements under the Due Process Clause of the Fourteenth Amendment. The court emphasized that the importance of notice and opportunity is an essential component of due process rights and must be protected. The Court stated in *Fuentes v. Shevin*, supra, as follows:

> The issue is whether procedural due process in the context of these cases requires an opportunity for a hearing *before* the State authorizes its agents to seize property in the possession of a person upon the application of another.
> **The constitutional right to be heard is a basic aspect of the duty of government to follow a fair process of decision making when it acts to deprive a person of his possessions. The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment— to minimize substantively unfair or mistaken deprivations of property, a danger that is especially great when the State seizes goods simply upon the application of and for the benefit of a**

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -15-

private party.
[**Emphasis** added.]

34. While there is a clause in the contract between the parties waving rights to NOTICE OF EX PARTE PREJUDGEMENT REMEDY / CLAIM, said clause is unconscionable, having no similar counterpart clause whereby BAY ADVANCE, LLC also gives up rights to various notices and due process rights. It is also unconstitutional because it requires the seller of receivables to waive his due process rights. The clause waiving rights to a Jury Trial is similarly one sided and unconscionable, since it violates the Seventh Amendment to the US Constitution for the United States of America.

## III. PARTIES

35. BAY ADVANCE, LLC is the principal and the Purchaser of the receivables from Plaintiff's company, Industrial Electric Company. I am an electrical Contractor and a sole proprietorship. JAMES TRUDELL is an attorney working for HASSETT AND GEORGE, P.C., a law firm, that created the non-judicial NOTICE OF EX PARTE PREJUDGMENT REMEDY/CLAIM FOR HEARING TO DISSOLVE OR MODIFY. ELIZASBETH OSTROWSKI is an employee of the Connecticut State Marshals Service. The CONNECTICUT STATE MARSHALS COMMISSION is a Connecticut state agency which serves as a substitute for the Sheriff's Departments, state-wide, which is the result of state legislation that eliminated the State Sheriff's offices statewide. All of the Defendants are attempting to enforce a **non-judicial administrative document**, which has not been presented to the Courts and has not been litigated in front of any Judge in any court in Connecticut.

## IV. FIRST CAUSE OF ACTION

**Declaratory and Injunctive Relief Pursuant to Title 28 US Code §§ 2201 and 2202, 1343.**
**Against all Defendants**

36. I, Barry Halajian, the Plaintiff, repeat and re-allege each and every allegation contained in the above paragraphs as if fully stated herein. Defendants conspired with each other and their agents and attorneys in violation of the common law.

37. Initially, Plaintiff was contacted by BAY ADVANCE, LLC who induced me into

signing a Receivables sales contract/ loan contract with BAY ADVANCE, LLC, a buyer of receivables and a commercial loan company. Later, I was sent a text message regarding the contract I had signed and asked to approve the message. I was told I had to approve the text message regarding the contract that day because I was approved for funding and I had to sign immediately or lose the opportunity to obtain the funding, see **Exhibit E**, attached and incorporated by reference.

38. Said sales tactic is a common method used by loan brokers and lenders to induce the prospective buyer of a loan or seller of receivables to sign the loan documents immediately, without reading the contract. When one party to a contract has no opportunity to read the contract before signing, then there can be no meeting of the minds because the party who is induced to sign the contract cannot familiarize themselves with the terms and conditions of the contract and learn about the nature of the commitment they are making. This is commonly referred to as overreaching and a substantially similar case was cited above, whereby a woman from Morocco signed a prenuptial agreement, which was later nullified by the courts in Virginia because the woman only spoke broken English and did not have the opportunity to seek the advice of an attorney. She was also mislead about the nature of what she was signing, see *Chaplain v. Chaplain*, supra.

39. In addition, the contract has several provisions that constitute unconscionable clauses in the contract, which are so one sided that they make the contract void under Connecticut law, see *Monetary Fulnding Group v. Pluchino*, 87 Conn. App. 401 (2005). In the above case the lender loaned $20,000 with a 90 day term, a 15 percent interest rate, finance fees of $5,000 and a balloon payment in 90 days, which the loan broker knew that the borrower could not repay without a second loan. The loan broker offered the borrower a second loan of $80,000.00 with finance fees of $21,000.00 payable in advance and misled the borrower charging him excessive fees much higher than promised and a second oppressive loan for $80,000.00. This is analogous to my loan with BAY ADVANCE.

40. The unconscionable clauses in the BAY ADVANCE, LLC contract are as follows: In my case there are many sections of the contract that place one sided restrictions of the borrower /

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF          Page -17-

seller of the receivables, that is not a restriction on the lender / buyer of receivables, making the contract unconscionable as follows: (1.) On Page 3 of the Contract, Terms and conditions at Section 1.8, the Seller is compelled to agree to indemnify the Processor against all legal claims and liability including but not limited to lost profits, lost revenues, lost business opportunities, exemplary, and punitive damages special, incidental, indirect or consequential damages, all of which is waived by the seller and guarantor. Similar wording is on page 3 at Section 1.9 regarding the Purchaser of receivables, who is also declared to not be liable for the above list of legal claims; (2.) the text message that was sent was presumably some kind of undescribed notice devoid of the kind of clarity and precision that is expected in a receivables purchase agreement. It required a confirmation from me as the seller that did not explain what the purpose of the text message was. I discovered later that the Text message was notice of a reduction in the amount loaned from $60,000.00 dollars to $42,000.00 which only became apparent when the wire transfer came through for $42,000.00 instead of $60,000.00 as originally agreed; (3.) Page 4 contains various protection that the Purchaser asserts to protect themselves from default, including Protection 6, which gives the Purchaser of receivables the right to take over the Sellers lease. This would only accomplish a destruction of the sellers capacity to continue to operate in business, by giving the authority to the purchaser to take over the sellers business office and warehouse space by forcing the seller/ borrower to assign their commercial lease to the Purchaser. In Protection 7 the purchaser of receivables can file a lawsuit against the seller and obtain costs and attorneys fees which the seller cannot do as discussed above; (4.) the Seller is forced to agree to waive their rights to a Jury Trial at Section 4.12, which violates the Seventh Amendment to the Constitution For the United States of America, and a class action lawsuit under Section 4.13, which is an unconscionable waiver of rights to remedies that should be available to everyone.

41. As a result of the foregoing Plaintiff ask for declaratory and injunctive relief in the nature of an order declaring the NOTICE OF PREJUDGMENT REMEDY / CLAIM void because of the unconscionable methods that were used to obtain a signature and the many unconscionable elements to the contract. I had no opportunity to show the contract to an attorney

and I do not have a working knowledge of the law that would enable me to understand many of the legal terms and implications of the many pages of the three contracts that constitute the agreement in this matter. As a result, there was no meeting of the minds and I was subjected to an unfair and unconscionable agreement that is void because of its many unconscionable elements.

## V. SECOND CAUSE OF ACTION

Deprivation of Rights Under Color of Authority, Title 42, US Code §§ 1983, 1985, Due process Clause of the Fourteenth Amendment.

**Against all Defendants**

42. I, Barry Halajian, the Plaintiff, repeat and re-allege each and every allegation contained in the above paragraphs as if fully stated herein. Defendants conspired with each other and their agents and attorneys in violation of the common law.

43. Many clauses in the above cited contract are unconscionable. The one- sided adhesion contract takes away many rights, including due process rights, the rights to recover numerous categories of damages, including consequential damages, attorney's fees, court costs trial by jury and a right to litigate the EX PARTE PREJUDGMENT REMEDY/CLAIM waiver. No similar waiver is found in the contract where BAY ADVANCE, LLC has to waive due process rights under the Fourteenth Amendment. This and the other unconscionable clauses described above are unconstitutional clause and cannot be considered valid, since it strips the Seller of receivables of most of their due process rights and makes any attempt at litigation meaningless and pointless. Other people in California are not having their bank accounts frozen by JP MORGAN CHASE BANK, NA when there are non-judicial actions taken by State officials in conjunction with attorneys. This violates the equal protection Clause of the Fourteenth Amendment.

44. The principal violation of my due process rights was the imposition of a NOTICE OF EX PARTE PREJUDGMENT REMEDY / CLAIM that does not involve any judicial due process, court hearings, appellate review, Juries or evidentiary process such as discovery. This is not well thought of by the US Supreme Court and, according to *Lynch v. Household Finance*,

supra can be nullified by the Federal Courts via 28 USC § 1343, which states:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of **any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;**

**(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;**

**(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;**
(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

(b) For purposes of this section—

(1) the District of Columbia shall be considered to be a State; and

(2) any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
[**Emphasis** added]

45. The Fourteenth Amendment mandates that no person shall be deprived of life, liberty or property without due process of law. Each person who has to vindicate their rights in courts cannot be expected to litigate their rights without all of their due process rights. And, as discussed, the one-sided nature of the agreement takes away rights of the weaker party, which are retained by the other party, making the entire agreement unconscionable. All of the Defendants violated the due process clauses of the Fifth and Fourteenth Amendment. My rights to due process under the Fifth Amendment is by way of the Fourteenth Amendment.

46. The non-government private party Defendants who are not working as government workers and are not a government agency are state actors where they are participating in actions taken by government agencies, such as the CONNECTICUT STATE MARSHALLS COMMISSION and government actors, such as ELIZABETH OSTROWSKI. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents, "*United States v. Price*, 383 U. S.

787, 794 (1966)." *Adikes v. SH Kress & Co.*, 398 US 144, (1970). Based upon the foregoing, all defendants, including private parties and privately owned businesses are liable under Title 42, US Code, § 1983. In particular, JP MORGAN CHASE BANK, NA has attorneys who have the same access to law libraries that I do and could have prevented this deprivation of rights under color of authority that is discussed here. *Lynch v. Household Finance*, supra was a decision of US Supreme Court issued more than fifty years ago now and has been the controlling law regarding this matter for that long. Additionally, *Fuentes v Shevin*, 407 US 67 (1972) has been the controlling law regarding notice and opportunity and the general prohibition against seizing assets without due process of law for many years, The court in *Fuentes v. Shevin*, supra, stated:

> **If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented.** At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. **But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred.** "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Stanley v. Illinois*, 405 U. S. 645, 647.
> [**Emphasis** added]

## VI. THIRD CAUSE OF ACTION

Breach of the covenant of good faith and fair dealing.

**Against all Defendants**

47. I, Barry Halajian, the Plaintiff, repeat and re-allege each and every allegation contained in the above paragraphs as if fully stated herein. Defendants conspired with each other and their agents and attorneys in violation of the common law.

48. The Defendants, and all of them, have conspired to present and collect money on a contract that is unconscionable and the result of actions taken that are based upon unclean hands. Said contract is one sided and requires the borrower to give up important rights that are not surrendered by the Purchaser/lender, BAY ADVANCE, LLC. The standard definition of an unconscionable contract is as described in *Smith v. Mitsubishi Motors Credit of America, Inc.*, 247 Conn. 342, (1998) as follows:

> **The classic definition of an unconscionable contract is one "which no man in his senses, not under delusion, would make, on the one hand, and which no fair and**

**honest man would accept, on the other." (Internal quotation marks omitted.)** *Neal* **v.** *Lacob,* **31 Ill. App. 3d 137, 142, 334 N.E.2d 435 (1975), quoting** *Hume* **v.** *United States,* **132 U.S. 406, 410, 10 S. Ct. 134, 33 L. Ed. 393 (1889).**
    **[Emphasis** added]

49. Plaintiff is requesting declaratory and injunctive relief from this court to protect my business interests in the matter so that I can have fair and equitable access to the courts and I cannot be compelled to waive important rights due to lack of proper notice in the stage where I was considering the proposed sale of receivables with an informed and honest understanding of the terms and conditions of the contract. I was not able to discover what I was committing to in the text message until after I acknowledged it. For the most sophisticated and capable attorneys or lay people with a good understanding of contract law and business law a few minutes of examination of this text message will create more questions than answers. The text message added confusion and intentionally misleading wording to the other 12 pages of contracts that is extremely unfair and one-sided and contains very harsh terms and conditions. JP MORGAN CHASE BANK, NA, a fiduciary duty to comply with the law, and protect me from unscrupulous vendors, where they have violated the clear language of a US Supreme Court ruling, *Lynch v. Household Finance,* supra.

50. According to the US Supreme Court everyone is entitled to notice and opportunity as an essential element of due process, see *Fuentes v. Shevin,* 407 U.S. 67 (1972). The manner by which the contract was presented for signature is, therefore, a breach of the covenant of good faith and fair dealing. I, the Plaintiff, therefore, ask that the NOTICE OF PREJUDGMENT REMEDY/CLAIM be declared void for a violation of my right to due process of law, by incorporating a clause that is one-sided and unconscionable. I was also not provided with an opportunity for a hearing before any judge in a court of law, discovery, appellate review, enforcement of rules of court, evidentiary hearings, procedural safeguards and broad application of Connecticut appeals process and court rulings. In *Fuentes v. Shevin*, supra, the court asserts that the value of protecting personal property from unlawful confiscation is paramount:

> So viewed, the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference. See

*Lynch v. Household Finance Corp.*, 405 U. S. 538, 552.

## VII. FOURTH CAUSE OF ACTION

Cancellation of Instruments

**Against all Defendants**

51. I, Barry Halajian, the Plaintiff, repeat and re-allege each and every allegation contained in the above paragraphs as if fully stated herein. Defendants conspired with each other and their agents and attorneys in violation of the common law.

52. The Attorneys, along with their client conspired to conceal the unconscionable provisions of their text message, by creating vague and ambiguous language, knowing that Plaintiff would likely presume that I was still receiving $60,000.00 dollars. Instead, I received $42,000.00. This was a big surprise. The NOTICE OF EX PARTE PREJUDGMENT REMEDY/CLAIM document is a non-judicial process involving one government official and one attorney, who acted in reckless disregard of Constitutional mandates and US Supreme Court rulings. This unconscionable contract claims to authorize the creditor to take over my office and warehouse lease, compels me to waive my right to sue for damages including exemplary and punitive damages, special incidental, indirect or consequential damages, and indemnification of BAY ADVANCE, LLC and their principals, agents etc., waiver of my right to participate in a class action lawsuit, and as discussed above, the contract includes a waiver of my right to a **trial by jury**.

53. From my examination of the case law in Connecticut it appears that the courts in Connecticut have not avoided making firm decisions about unconscionable contracts and uncomfortable questions about the unsavory and unconscionable terms and conditions of some of the contracts they have reviewed. BAY ADVANCE, LLC, knew they were making vague and ambiguous statements in their text message and that it would be next to impossible for the average person to understand what was being conveyed in the text. The inducement of swift release of the funds was all that was needed to motivate me to agree to the deliberately vague and indefinite text message.

54. According to the case law cited and the facts stated above, this NOTICE OF EX PARTE PREJUDGEMENT REMEDY / CLAIM FOR HEARING TO DISSOLVE OR MODIFY is a relic of the past and needs to be declared void and without force and effect in law for all of the foregoing reasons. There is no case number on the document. The courts cannot allow a Connecticut State Marshall or a corrupt attorney to function in a judicial capacity.

55. One final fact is important to discuss. Plaintiff made seven regular payments of three thousand dollars, which adds up to $21,000.00 to BAY ADVANCE, LLC before it was no longer possible to make these payments due to a delay in customer payments. Since it was made very clear by the wording in the agreed to contract, this was NOT a loan according to section 1.11 "Sale of Receipts" where it states the following:

> "Payments made to BA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers."

BA's alleged default could have been prevented if the full amount as per contract agreement was funded. This would have made it possible to continue daily payments even though my customer's payment was late arriving. This was a perfect "set up" for failure. Now they are demanding the entire $75,000.00 dollars in my checking account. That adds up to $96,000.00, which is six thousand dollars more than is called for in the contract. This sounds like bank robbery and grand larceny. I also believe they are really looking to receive a total of $85,940.00 which is revealed in the Prejudgment Garnishment, which states a claim in the amount of $85,940.00, see **Exhibit C**. This would be a grand total of 105,940.00 which sould be the addition of the paid $21,000.00 to the $85.940.00.

56. Additionally this is the reason we need a fair and impartial court system with discovery, rules of evidence, rules of court, judicial conduct rules and appellate remedies. I have been shut out of some of these judicial protections for due process. Based upon the foregoing I ask the court for an order declaring this EX PARTE PREJUDGEMENT REMEDY/ CLAIM to be void and without force and effect in law. This contract was a breach from the beginning by the lender, BAY ADVANCE due to all facts mentioned previously.

## VIII. REMEDY

57. I, Barry Halajian, the Plaintiff, have presented several common law and statutory causes of action all of which supplies authority and substantive rationale for setting aside the unconscionable contract that is the subject of this dispute. I, therefore, ask the court for a court order granting declaratory and injunctive relief. This contract is unconscionable and oppressive. It involves overreaching, calculated concealment to cover up the oppressive terms and conditions and the use of questionable legal procedures that have not been cast in a favorable light by the US Supreme Court, see *Lynch v. Household Finance*, supra. I ask the court to issue an order nullifying this NOTICE OF EX PARTE PREJUDGMENT REMEDY/ CLAIM FOR HEARING TO DISSOLVE OR MODIFY and declaring it void. I also ask the court to issue an injunction against the Defendants ordering JP MORGAN CHASE BANK, NA TO RELEASE AND RETURN the, approximately, $75, 000.00 that they seized and placed in an administrative hold. I ask further that if the $75,000.00 dollars that is the subject of this dispute is not returned within 15 days from the time of service of process of this claim upon JP MORGAN CHASE BANK, NA then I ask for a judgement of consequential damages in the amount of four hundred thousand dollars for the damages done to my business.

58. I cannot buy expensive materials to complete existing electrical wiring jobs, which reduces and eliminates a large stream of income to my business, resolve my business expenses. I cannot bid on jobs that require me to buy materials or take on new work. I will continue to NOT be able to pay my workers and I will permanently lose them. Experienced electricians are very hard to find these days. The actions by these Defendants has crippled my business. I ask for punitive damages against JAMES TRUDELL and ELIZABETH OSTROWSKI in the amount of $100,000.00 for oppression, fraud, conspiracy and malice.

Respectfully Submitted,

Date: 25th day of July, 2023

By: _____
Barry Stuart Halajian

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF     Page -25-

**VERIFICATION**

I have read the **PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF, VIOLATION OF TITLE 42 § 1983, BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND FRAUDULENT CANCELLATION OF INSTRUMENTS** and know the contents thereof to be true; and the same is true of my own knowledge, except to the matters, which are therein stated on my information and belief, and as to those matters, I believe them to be true. The foregoing is true, correct, complete and not misleading to the best of my knowledge. The foregoing statements are made under penalty of perjury and if called as a witness I am willing to testify.

Sealed by the voluntary act of my own hand on this 25th day of July, 2023

_____
Barry Halajian

PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF        Page -26-

**EXHIBITS**

EXHIBIT A   COPY OF THE NOTICE OF EX PARTE PREJUDGMENT REMEDY/ CLAIM

EXHIBIT B   EMAIL FROM JAMES TRUDELL, ATTORNEY AT HASSETT GEORGE, P.C.

EXHIBIT C   COPY OF PAGE 23 OF THE EXPARTE PREJUDGEMNT SHOWING TOTAL CLAIM BY LENDER

EXHIBIT D   A COPY OF THE 12 PAGE CONTRACT THAT IS THE SUBJECT OF THIS DISPUTE

EXHIBIT E   TEXT MESSAGE FROM BAY ADVANCE, LLC

EXHIBIT F   EMAIL FROM BAY ADVANCE, LLC

EXHIBIT G   FIRST PAGE OF THE ORIGINAL CONTRACT SIGNED

EXHIBIT H   ALTERED FIRST PAGE OF CONTRACT AFTER IT WAS SIGNED

# EXHIBIT A

| NOTICE OF EX PARTE PRE-JUDGMENT REMEDY/CLAIM FOR HEARING TO DISSOLVE OR MODIFY<br>JD-CV-55 Rev. 3-03<br>C.G.S. §§ 52-278e, 52-278f | STATE OF CONNECTICUT<br>SUPERIOR COURT | COURT USE ONLY<br>CLPJRX<br>Ex Parte Application<br><br>CLPJRXP<br>Contest Ex Parte<br>PJR Application |

**Instructions To Plaintiff/Applicant**

1. This form MUST be used in connection with ex parte prejudgment remedies issued pursuant to General Statutes § 52-278e, and MAY be used in connection with prejudgment remedies issued in an action upon a commercial transaction pursuant to General Statutes § 52-278f.
2. Complete Section I below and submit to the Clerk along with, and immediately followed by your application and the other required documents for ex parte prejudgment remedy.
3. If prejudgment remedy issued, include this form in the process served on the defendant.

## Section I — Case Information (To be completed by Plaintiff/Applicant)

| ☒ Judicial District | ☐ Housing Session | ☐ Geographical Area number ___ | Court address<br>123 Hoyt Street, Stamford, CT 06905 |

Has a temporary restraining order been requested? ☐ Yes ☒ No

Amount, legal interest, or property in demand, exclusive of interest and costs is ("X" one of the following):

Name of Case (First-named plaintiff vs. First-named defendant)
**Bay Advance, LLC v. Barry Stuart Halajian d/b/a Industrial Electric Company**

☐ Less than $2500
☐ $2500 through $14,999.99
☒ $15,000 or more

CLPJRX

| ☐ See attached form JD-CV-67 for Continuation Parties | Case type (From Judicial Branch code list)<br>MAJOR: **C**   MINOR: **40** | Number counts<br>**1** |

("X" if applicable)
☐ Claiming other relief in addition to or in lieu of money damages

Name and address of Plaintiff/Applicant (Person making application for Prejudgment Remedy) (Number, street, town and zip code)
**Bay Advance, LLC - 265 Tresser Blvd., Stamford, CT 06901**

Name and address of Defendant (Person against whom Prejudgment Remedy is sought) (Number, street, town and zip code)
**Barry Stuart Halajian d/b/a Industrial Electric Company - 4974 Fresno St. Apt. 290, Fresno, CA 93726**

Name and address of any third person holding property of Defendant who is subject to garnishee process preventing dissipation of such property
**J.P. Morgan Chase Bank, N.A.**

| For The Plaintiff(s) Enter The Appearance Of: | Name and address of Attorney, Law Firm or Plaintiff if pro se (Number, street, town and zip code)<br>**Hassett & George, P.C. - 945 Hopmeadow Street, Simsbury, CT 06070** | | |
| | Telephone number<br>(860) 651-1333 | Juris number (If attorney or law firm)<br>407894 | Signed | Date signed<br>6/9/23 |

## Section II — Notice To Defendant

You have rights specified in the Connecticut General Statutes, including Chapter 903a, that you may wish to exercise concerning this prejudgment remedy. These rights include the right to a hearing:

(1) to object to the prejudgment remedy because you have a defense to or set-off against the action or a counterclaim against the plaintiff or because the amount of the prejudgment remedy allowed by the court is unreasonably high or because payment of any judgment that may be rendered against you is adequately secured by any insurance that you may have;

(2) to request that the plaintiff post a bond in accordance with section 52-278d of the General Statutes to secure you against any damages that may result from the prejudgment remedy;

(3) to request that the prejudgment remedy be dissolved or modified or that you be allowed to substitute a bond for the prejudgment remedy; and

(4) to show that the property subject to the prejudgment remedy is exempt from such prejudgment remedy.

You may request a hearing to move to dissolve or modify the prejudgment remedy. **The hearing may be requested by any proper motion or by completing section III below and returning this form to the superior court at the Court Address listed above.**

## Section III — Defendant's Claim And Request For Hearing (To be completed by Defendant)

I, the defendant, request a hearing to dissolve or modify the prejudgment remedy, and claim: ("X" the appropriate boxes)

☐ a defense, counterclaim, set-off, or exemption.
☐ that any judgment that may be rendered is adequately secured by insurance.
☐ that the amount of the prejudgment remedy is unreasonably high.
☐ that the plaintiff be required to post a bond to secure me against any damages which may result from the prejudgment remedy.
☐ that I be allowed to substitute a bond for the prejudgment remedy.

I certify that a copy of the above claim was mailed/delivered to the Plaintiff or the Plaintiff's attorney on the Date Mailed or Delivered shown below.

| Date mailed or delivered | Signed (Defendant) | Date signed |

Type or print name and address of Defendant

Name of each party served*

Address at which service was made*

*If necessary, attach additional sheet with names of each party served and the address at which service was made.

FOR COURT USE ONLY

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
INDIFFERENT PERSON

Docket number
**PJR CV**

RETURN DATE: JULY 11, 2023          :      **SUPERIOR COURT**

BAY ADVANCE, LLC             :      **J.D. OF STAMFORD/**
                                          :      **NORWALK**

V.                                          :      **AT STAMFORD**

BARRY STUART HALAJIAN D/B/A     :
INDUSTRIAL ELECTRIC COMPANY     :      **JUNE 9, 2023**

<u>WRIT, SUMMONS AND DIRECTION FOR GARNISHMENT OR ATTACHMENT</u>

TO ANY PROPERY OFFICER: BY AUTHORITY OF THE STATE OF

CONNECTICUT,

THE AGREEMENT ATTACHED HERETO AND INCORPORATED HEREIN

THAT IS THE SUBJECT OF THIS APPLICATION IS A COMMERCIAL

TRANSACTION. UNDER THE SAID AGREEMENT, THE DEFENDANT(S)

CONSENT(S) TO THE JURISIDCTION OF CONNECTICUT. UNDER SECTION 4.13

OF THE SAID COMMERCIAL AGREEMENT DEFENDANT(S) AGREED TO

WAIVE ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF

THE CONNECTICUT GENERAL STATUTES OR OTHER STATUTES OR

STATUTES AFFECTING PREJUDGMENT REMEDIES AND AUTHORIZES

PLAINTIFF'S ATTORNEY TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY

WITHOUT COURT ORDER AND WITHOUT THE NECESSITY OF POSTING A

BOND OR OTHER SECURITY, PROVIDED THE COMPLAINT SHALL SET FORTH

A COPY OF THIS WAIVER. THEREFORE, THIS APPLICATION IS REQUESTED

EX-PARTE PURSUANT TO C.G.S. §52-278E(A) AND C.G.S. §52-278F AND UPON

PLAINTIFF'S AFFIDAVIT IN SUPPORT OF AN EX-PARTE PREJUDGMENT REMEDY.

UNDER THE SAID COMMERCIAL AGREEMENT, AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, THE DEFENDANT(S) ALSO ACKNOWLEDGED, AGREED AND CONSENTED THAT PLAINTIFF MAY ATTACH OR GARNISH ANY AND ALL OF THEIR MONEY/ACCOUNTS/FUNDS HELD IN ANY BANK ACCOUNT AT A BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH/OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED TO CONDUCT BUSINESS IN CONNECTICUT.

You are hereby commanded to summon the Defendant(s), **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY**, having a residence at 4974 Fresno St. Apt. 290, Fresno, CA 93726, to appear before the Superior Court for the Judicial District of Stamford/Norwalk, 123 Hoyt St, Connecticut, on July 11, 2023, such appearance to be made by the Defendant or his attorney by filing a written statement of appearance with the clerk of the court on or before the second day following the return date, then and there to answer unto **BAY ADVANCE, LLC**, having a place of business in Stamford, Connecticut, in a civil action wherein the Plaintiff complains and alleges as set forth in the accompanying complaint.

And you are hereby further commanded to serve a true and attested copy of this writ and of the accompanying Affidavit and Complaint on **J.P. MORGAN CHASE BANK, N.A.** as their agent, trustee and/or debtor of the Defendants and may be indebted to the said Defendants.

And you are further commanded, in accordance with the accompanying Affidavit of Debt, to attach to the value of **$85,940.00** of the goods, accounts, property and estate of the Defendants herein, anywhere located, including funds at **J.P. MORGAN CHASE BANK, N.A.**.

And you are further commanded to summon these garnishees that are currently holding funds of and/or indebted to the defendant to appear before the court at the time and place above mentioned, then and there to disclose on oath whether they have concealed in its hands the goods or estate of the said Defendant, or are indebted to the Defendant.

**WHEREFORE**, the Plaintiff claims monetary damages in excess of $14,999, plus interest, costs of suit, attorneys' fees and any and all other relief, legal or equitable, that the Court deems just and proper.

Donna Pare of 945 Hopmeadow Street, Simsbury, Connecticut, is recognized in the sum of $250.00 to prosecute this action.

I hereby certify that I have personal knowledge of the financial responsibility of the Plaintiff and deem it sufficient to pay the costs of this action.

Hereof fail not, but due service and return make.

Dated at Simsbury, Connecticut this 9TH day of June, 2023.

James E. Trudell, Esq.
Commissioner of the Superior Court

Please enter the appearance of:
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333 x105
Facsimile No.: (860) 651-1888
Juris No.: 407894
Attorneys for Plaintiff

James E. Trudell, Esq.
Commissioner of the Superior Court

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL

Hassett & George, P.C.   945 Hopmeadow Street, Simsbury, CT  06070   4
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

| | | |
|---|---|---|
| RETURN DATE: JULY 11, 2023 | : | SUPERIOR COURT |
| BAY ADVANCE, LLC | : | J.D. OF STAMFORD/ |
| | : | NORWALK |
| V. | : | AT STAMFORD |
| BARRY STUART HALAJIAN D/B/A INDUSTRIAL | : | |
| ELECTRIC COMPANY | : | JUNE 9, 2023 |

## AFFIDAVIT OF DEBT

STATE OF _Connecticut_    :

                    :   ss.

COUNTY OF _Fairfield_    :

I, _Matthew Stafford_, being duly sworn, hereby deposes and say:

1.    I am over the age of eighteen (18) years and understand and believe in the obligation of an oath.

2.    I am an account manager of BAY ADVANCE, LLC ("BAY ADVANCE" or the "Company") and I have personal knowledge as to the debts owed from the defendant, **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY** ("INDUSTRIAL ELECTRIC") to the Company.

3.    BARRY STUART HALAJIAN owns and controls INDUSTRIAL ELECTRIC.

4.    On or about May 18 2023, BAY ADVANCE, as buyer, and INDUSTRIAL ELECTRIC as seller, executed an Agreement (the "Agreement"), whereby INDUSTRIAL ELECTRIC promised to pay BAY ADVANCE a sum certain for future receivables, plus other

fees as more fully described therein. A true and accurate copy of the Agreement is attached hereto as **Exhibit A.** BARRY STUART HALAJIAN executed the Agreement.

5.      The Agreement is in default because of INDUSTRIAL ELECTRIC's failure to make the required payments, despite efforts to reconcile the payments by BAY ADVANCE. BARRY STUART HALAJIAN continues to operate INDUSTRIAL ELECTRIC.

6.      The Agreement provides, among other things, that BAY ADVANCE is entitled to collect attorney's fees to enforce the Agreement. INDUSTRIAL ELECTRIC consented to jurisdiction in Connecticut under the Agreement.

7.      Furthermore, Section 4.13 of the Agreement contains a Connecticut Commercial Waiver with regards to prejudgment remedies, which is incorporated by reference herein and provides as follows:

**Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH BA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO

**PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BA BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.**

8.   BAY ADVANCE seeks a prejudgment remedy attachment against INDUSTRIAL ELECTRIC, jointly and severally, as follows:

| | |
|---|---|
| Balance: | $ 71,940.00 |
| Anticipated legal fees: | $ 14,000.00 |
| **Total:** | **$ 85,940.00** |

9.   As a result of INDUSTRIAL ELECTRIC's breach of the Agreement, there is probable cause that a judgment in the amount of the said balance, $71,940.00, plus reasonable legal's fees, as anticipated above, will be rendered in favor of the plaintiff, BAY ADVANCE.

10.   I am not aware of any valid defenses, off-sets or counterclaim to BAY ADVANCE'S claim for damages.

AFFIANT,

_M _____

Subscribed and sworn to before me this **9th** day of **June** , 2023.



Print Name: **Ashley Spencer**
Notary Public
My Commission Expires **09/14/2026**

Ashley Spencer
Notary Public, State of Texas
Comm. Expires 09-14-2026
Notary ID 131722901

Notarized Online with NotaryLive.com

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT 06070   4
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

This document is signed by

| | Signatory | CN=Ashley D Spencer,  DNQ=A01410D000001875D3BA5980002ECC7, O=Texas,  C=US |
|---|---|---|
| PDF sign | Date/Time | Fri Jun 09 19:18:57 UTC 2023 |
| | Issuer-Certificate | CN=IGC CA 1,  OU=IdenTrust Global Common, O=IdenTrust,  C=US |
| | Serial-No. | 85078529539068681685267634730132246352 |
| | Method | urn:adobe.com:Adobe.PPKLite:adbe.pkcs7.sha1  (Adobe Signature) |

EXHIBIT "A"

# BAY ADVANCE

## FUTURE RECEIPTS SALE AGREEMENT

This FUTURE RECEIPTS SALE AGREEMENT ("Agreement") dated ____5/18/2023____ between BAY ADVANCE having a place of business in Connecticut ("**BA**") and the Merchant(s) listed below (**Merchant**")

### Merchant Information:

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Entity Type: SOLE PROP | EIN: 94-2782591 |
| State of Incorporation: CA | Phone Number: |
| Physical Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | Mailing Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 |

### Owner/Guarantor Information:

**Owner 1/Guarantor 1**

| Full Name: BARRY S. HALAJIAN | Cell Phone: | Social Security #: 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 |
|---|---|---|
| Home Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | City/State: FRESNO, CA | Zip Code: 93726 |
| Ownership %: | Email: ieds@sbcglobal.net | DOB: 09/29/1959 |

**Owner 2/Guarantor 2**

| Full Name: | Cell Phone: | Social Security #: |
|---|---|---|
| Home Address: | City/State: | Zip Code: |
| Ownership %: | Email: | DOB: |

### Purchase Detail:

| Purchased Amount | $ 89,940.00 | The dollar value of future receipts. |
|---|---|---|
| Purchase Price | $ 60,000.00 | The dollar price the purchaser is paying for the amount sold. |
| Purchased Percent | 45% | Percentage of Future Receipts to be remitted to Purchaser |
| Processing Fee | UP TO 75% | The dollar amount to be deducted from Purchase Price for underwriting fees, broker fees, and related expenses. |
| Remittance Transaction Fee | $175.00 | The dollar amount to be deducted from Purchase Price for the transaction of ACH Remittance. |
| UCC Fee | $99.00 | The dollar amount to be deducted from Purchase Price for the UCC processing fee. |
| Wire Transaction Fee | $50.00 | Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH |
| **Disbursement Amount to Merchant** | **$42,000.00** | **Net of fees, discount, and direct payments** |
| Remittance Choice | ACH | Remittance can occur via ACH, Bank Transfer, Bank Wire. |
| Payment Frequency | Daily | Daily (Each "Business Day" Monday through Friday excluding Federal Reserve Holidays) or Weekly |
| Remittance | $ 3,000.00 | Remittance amount of Future Receipts to be collected according to the Payment Frequency. |

### Default Details:

| NSF Fee (Standard) | $35.00 | Each returned payment without notice is a default. |
|---|---|---|
| Rejected ACH/Blocked ACH/Default Fee | $5,000.00 | When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank account cutting us from our collections. |
| Attorney's Fee | TBD | BA shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal. BA shall also be permitted to collect its reasonably attorney's fees if BA refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor |
| Stacking Fee | $10,000.00 | If the Merchant takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 of the purchased amount will be added to the Merchants current balance. |

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

Merchant hereby sells, assigns and transfers to BA (making BA the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to BA

Merchant is selling a portion of a future revenue stream to BA at a discount, not borrowing money from BA, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BA. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BA is entering this Agreement knowing athe risks that Merchant's business may slow down or fail, and BA assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give BA a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

BA will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, BA (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as BA receives payment in full of the Purchased Amount. Merchant hereby authorizes BA to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. BA's payment of the Purchase Price shall be deemed the acceptance and performance by BA of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by BA remains in the Account and will be held responsible for any fees incurred by BA resulting from a rejected ACH attempt or an Event of Default. BA is not responsible for any overdrafts or rejected transactions that may result from BA's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between BA and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A; and are hereby agreed to by Merchant.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

_____
(Signature)

 BARRY S. HALAJIAN 
(Name)

 OWNER 
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

_____
(Signature)

 BARRY S. HALAJIAN 
(Name)

 OWNER 
(Title)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #2                                         Merchant Initials: BH

## MERCHANT AGREEMENT TERMS AND CONDITIONS

### 1    TERMS OF ENROLLMENT IN PROGRAM

1.1    **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to BA with a Bank acceptable to BA to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to BA with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide BA and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes BA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to BA for the receipts as specified herein and to pay such amounts to BA. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by BA or not. This additional authorization is not a waiver of BA's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which BA did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of BA.

1.2    **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BA as per the terms of this Agreement.

1.3    **Future Purchase of Increments.** Subject to the terms of this Agreement, BA offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. BA reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

1.4    **Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "Total Remittance Amount" shall be defined as all payments made by Merchant to BA after BA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to accounting@cavallicapital.com Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and CC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by BA within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank BAount so that the total amount debited by BA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with BA's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

1.5    **Adjustments to the Remittance.** As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to BA to request a decrease in the Remittance. All requests hereunder must be in writing to accounting@cavallicapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and BA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide BA with viewing access to their bank account as well as all information reasonably requested by BA to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

1.6    **Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize BA and its agents to investigate their financial responsibility and history, and will provide to BA any authorizations, bank or financial statements, tax returns, etc., as BA deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. BA is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

1.7    **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide BA with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide BA with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from BA.

1.8    **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BA for monies owed to BA from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by BA.

1.9    **No Liability.** In no event will BA be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BA's attorney's fees and expenses resulting therefrom.

1.10    **Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BA, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

1.11    **Sale of Receipts.** Merchant and BA agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from BA to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. BA has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that BA has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BA shall promptly refund to Merchant any interest received by BA in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BA not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

1.12    **Power of Attorney.** Merchant irrevocably appoints BA as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BA from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BA; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which BA may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

1.13    **Protections Against Default.** The following Protections 1 through 8 may be invoked by BA immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have

BAY ADVANCE- #3                                                                                                    Merchant Initials **BH**

an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BA electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to BA; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of BA, and (ii) the written agreement of any BA or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BA; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor, (f) Merchant fails to provide BA with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from BA, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to BA at law, in equity or otherwise pursuant to this Agreement.

**Protection 1.** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2.** BA may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s)

**Protection 3.** BA may enforce its security interest in the Collateral.

**Protection 4.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to BA from Merchant.

**Protection 5.** BA may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if BA recovers a Judgment against Merchant, Merchant shall be liable for all of BA's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 6.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to BA. Upon breach of any provision in this Agreement, BA may exercise its rights under this Assignment of Lease without prior Notice to Merchant.

**Protection 7.** BA may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to BA.

1.14    **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes BA to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that BA obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against BA or any of its affiliates relating to any (i)investigation undertaken by or on behalf of BA as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15    **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by BA, including this Agreement and any other BA documents (collectively, "Confidential Information") are proprietary and confidential information of BA. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BA to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles BA to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.16    **Publicity.** Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes BA to use its, his or her name in listings of clients and in advertising and marketing materials.

1.17    **D/B/A's.** Merchant hereby acknowledges and agrees that BA may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BA and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2    REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1    **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to BA, and future statements which will be furnished hereafter at the discretion of BA, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise BA of any material adverse change in their financial condition, operation or ownership. BA may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to BA within five business days after request from BA. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

2.2    **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3    **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4    **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5    **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BA's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6    **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BA, nor shall Merchant change any of its places of business without prior written consent by BA.

2.7    **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

2.8    **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from BA to Merchant, execute, acknowledge and deliver to BA and/or to any other person, firm or corporation specified by BA, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9    **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10    **Unencumbered Receipts.** Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BA.

2.11    **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12    **Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

2.13    **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling BA the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

BAY ADVANCE- #4                                                        Merchant Initials: **BH**

**3      EVENTS OF DEFAULT AND REMEDIES**

3.1    **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying BA of its intent to breach this Agreement;

(d)    the Merchant fails to give BA 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(f)    Merchant shall transfer or sell all or substantially all of its assets;

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)    Merchant shall use multiple depository accounts without the prior written consent of BA

(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)    Merchant shall change its depositing account without the prior written consent of BA; or

(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of BA

(l)    Merchant's bank returns a code other than NSF cutting BA from its collections

(m)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with BA.

3.2    **Limited Personal Guaranty** The Personal Guaranty that is executed in connection with this Agreement is a limited and non-recourse guaranty in that Guarantor shall not be liable hereunder if Merchant ceases operations/goes out of business.

3.3    **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4, hereof, BA may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing of an ex-parte prejudgment remedy, and/or enforcing the Security Agreement contained herein. All rights, powers and remedies of BA in connection with this Agreement may be exercised at any time by BA after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.4    **Costs.** Merchant shall pay to BA all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of BA's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

3.5    **Required Notifications.** Merchant is required to give BA written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BA seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4      MISCELLANEOUS**

4.1    **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BA.

4.2    **Assignment.** BA may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3    **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to BA shall become effective only upon receipt by BA. Notices to Merchant shall become effective three days after mailing.

4.4    **Waiver Remedies.** No failure on the part of BA to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5    **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BA which consent may be withheld in BA's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State Connecticut. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall be, if BA so elects, instituted in any Connecticut state court sitting in the county of Fairfield, without regard to conflict of law provisions (together the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes and/or litigation arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and irrevocably waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum. Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by BA by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

4.6    **Survival of Representation,** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7    **Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

4.8    **Severability.** In case any of the provisions in this Agreement or any security or guaranty of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9    **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and BA and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10    **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11    **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12    **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13    **Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER

BAY ADVANCE- #5                                                                             Merchant Initials

PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH BA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BA BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.

AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT BA MAY ATTACH OR GARNISH ANY AND ALL OF MERCHANT AND GUARANTOR'S MONEY HELD IN ANY BANK ABAOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE/AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.

THE PARTIES HERETO AGREE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF THEIR OWN CHOOSING WITH RESPECT TO THE TERMS AND CONDITIONS HEREIN AS WELL AS THEIR MEANING.

MERCHANT AND GUARANTOR HAVE THE RIGHT TO CHALLENGE ANY PREJUDGEMENT ATTACHMENT OR GARNISHMENT IN ACCORDANCE WITH CONNECTICUT LAW.

Merchant Initial

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## SECURITY AGREEMENT AND GUARANTY

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PEFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Physical Address: 4974 N FRESNO ST APT 290 , FRESNO CA 93726 | EIN: 94-2782591 |

## SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BA a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BA under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to BA upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BA's entitlements under this Agreement, BA is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of BA's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant. BA or an affiliate of BA. BA is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. BA shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time. BA has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, BA will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BA written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BA is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BA. Merchant and Guarantor(s) agree(s) to execute and deliver to BA such instruments and documents BA may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BA is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BA under any other agreement between Merchant or Guarantor(s) and BA (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BA deems necessary to perfect or maintain BA's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BA to file any financing statements deemed necessary by BA to perfect or maintain BA's security interest. Merchant and Guarantor(s) shall be liable for, and BA may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BA in protecting, preserving and enforcing BA's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** BA shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction. BA may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BA may enter into an agreement with Merchant's landlord giving BA the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, BA may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to BA, whether by acceleration or otherwise.

## GUARANTY OF PERFORMANCE

As an additional inducement for BA to enter into this Agreement, the undersigned Guarantor(s) hereby provides BA with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to BA in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, BA may seek recovery from Guarantors for all of BA's losses and damages by enforcement of BA's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral BA may hold pursuant to this Agreement or any other guaranty.

BA does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)      Merchant's failure to pay timely any amount required under the Merchant Agreement: (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) BA's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BA. In addition, BA may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BA: (ii) release Merchant from its obligations to BA, (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations

BAY ADVANCE- #7                                                                                         Merchant Initials: **BH**

to BA under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BA must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (n) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

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
(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

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
(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

(Signature)

(Name)

(Title)

(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

(Signature)

(Name)

(Title)

(SSN)

(Driver's License)

BAY ADVANCE- #8

Merchant Initials **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | Tax ID: 94-2782591 |
|---|---|

Merchant Agreement: Merchant Agreement between BA, and Merchant, dated as of: 5/18/2023

Please Indicated your designated checking account:

| Bank Name: CHASE | Routing: 322271627 | Account: 288822536 |
|---|---|---|
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), and Check Debit is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes BA, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes BA to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

**In the amount of: 3,000.00**
**Or percentage of each banking deposit: 45%**
**On the following days: MONDAY - FRIDAY**

If any payment date falls on a weekend or Holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that BA may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes BA to initiate ACH entries to correct any erroneous payment transaction. If the Merchant has paid BA back in full without any missed payments, Merchant will be entitled to a rebate of four (4) payments.

**MISCELLANEOUS.** BA is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until BA has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford BA a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

| ACCEPTED AND AGREED | ACCEPTED AND AGREED |
|---|---|
| **FOR THE MERCHANT (#1)**   *Barry Harper* | **FOR THE OWNER/GUARANTOR (#1)**   *Barry Harper* |
| (Signature) | (Signature) |
| BARRY S. HALAJIAN | BARRY S. HALAJIAN |
| (Name) | (Name) |
| (Title) | (Title) |
| ACCEPTED AND AGREED | ACCEPTED AND AGREED |
| **FOR THE MERCHANT (#2)** | **FOR THE OWNER/GUARANTOR (#2)** |
| (Signature) | (Signature) |
| (Name) | (Name) |
| (Title) | (Title) |

BAY ADVANCE- #9

Merchant Initial **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b8c87ff0d

## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from BA. We look forward to being your funding partner for as long as you need.

**Daily ACH Program:**

BA, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

BA will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank: __Chase__

Bank portal website: __Chase.com__

Username: __Barrys56chevey__

Password: __GE67cr132Size4#__

Security Question / Answer 1: __N/A__

Security Question / Answer 2: __N/A__

Security Question / Answer 3: __N/A__

Any other information necessary to access your account: __No__

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**     _Barry Hayper_
_____
(Signature)

BARRY S. HALAJIAN
_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**     _Barry Hayper_
_____
(Signature)

BARRY S. HALAJIAN
_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #10                                          Merchant Initial **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## Emergency Contacts

Four valid emergency contacts are required to receive funding. Contacts will be verified.

Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____


Name:_____

Relation:_____

Phone Number:_____

Email Address:_____

BAY ADVANCE- #11

Merchant Init_____

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

**◄ Dropbox** Sign

| | |
|---|---|
| **Title** | BAY ADVANCE - BARRY S HALAJIAN |
| **File name** | BAY ADVANCE - BARRY STUART HALAJIAN.docx |
| **Document ID** | 6401d121b3c9429127527c0a23ffde4b6c87ff0d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| ↗ **SENT** | **05 / 18 / 2023** 20:45:51 UTC | Sent for signature to BARRY S. HALAJIAN (ieds@sbcglobal.net) from admin@bayadvancellc.com IP: 175.176.87.59 |
| ◉ **VIEWED** | **05 / 18 / 2023** 20:49:29 UTC | Viewed by BARRY S. HALAJIAN (ieds@sbcglobal.net) IP: 73.66.211.166 |
| ⬈ **SIGNED** | **05 / 18 / 2023** 20:52:05 UTC | Signed by BARRY S. HALAJIAN (ieds@sbcglobal.net) IP: 73.66.211.166 |
| ⊘ **COMPLETED** | **05 / 18 / 2023** 20:52:05 UTC | The document has been completed. |

RETURN DATE: JULY 11, 2023            :     SUPERIOR COURT

BAY ADVANCE, LLC                :     J.D. OF STAMFORD/
                                             :     NORWALK

V.                                         :     AT STAMFORD

BARRY STUART HALAJIAN D/B/A     :

INDUSTRIAL ELECTRIC COMPANY     :     JUNE 9, 2023

<u>APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY</u>

TO THE SUPERIOR COURT FOR THE JUDICIAL DISTRICT OF STAMFORD/NORWALK AT STAMFORD:

The undersigned represents as follows:

1. Pursuant to the attached signed Writ, Summons, Complaint, and Affidavit, the Plaintiff, **BAY ADVANCE, LLC**, which has a place of business in Stamford, Connecticut and is registered in Connecticut, is about to commence an action against Defendant, **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY**, having a residence at 4974 Fresno St. Apt. 290, Fresno, CA 93726 and;

2. That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and to secure such judgment the applicant seeks an ex-parte prejudgment remedy to secure the sum of **$85,940.00.**

3.    THE AGREEMENT ATTACHED HERETO IS A <u>COMMERCIAL</u> <u>TRANSACTION</u>.

4.    UNDER THE SAID AGREEMENT, THE DEFENDANTS CONSENT TO THE JURISIDCTION OF CONNECTICUT. UNDER SECTION 4.13 OF THE SAID COMMERCIAL AGREEMENT DEFENDANTS AGREED TO WAIVE ANY RIGHT TO A NOTICE AND HEARING UNDER CHAPTER 903A OF THE CONNECTICUT GENERAL STATUTES OR OTHER STATUTES OR STATUTES AFFECTING PREJUDGMENT REMEDIES AND AUTHORIZES PLAINTIFF'S ATTORNEY TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER AND WITHOUT THE NECESSITY OF POSTING A BOND OR OTHER SECURITY, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER. THEREFORE, THIS APPLICATION IS REQUESTED EX-PARTE PURSUANT TO C.G.S. §52-278E(A) AND C.G.S. §52-278F AND UPON PLAINTIFF'S AFFIDAVIT IN SUPPORT OF AN EX-PARTE PREJUDGMENT REMEDY.

5.    UNDER THE SAID COMMERCIAL AGREEMENT, AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, THE DEFENDANTS ALSO ACKNOWLEDGED, AGREED AND CONSENTED THAT PLAINTIFF MAY ATTACH OR GARNISH ANY AND ALL OF THEIR MONEY/ACCOUNTS/FUNDS HELD IN ANY

BANK ACCOUNT AT A BANKING INSTITUTION IF THAT BANKING INSTITUTION

HAS A BRANCH/OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS

REGISTERED TO CONDUCT BUSINESS IN CONNECTICUT.

THE PLAINTIFF,
BAY ADVANCE, LLC

By:

James E. Trudell, Esq.
Jared M. Alfin, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
INDIFFERENT PERSON

**Hassett & George, P.C.**   945 Hopmeadow Street, Simsbury, CT  06070    3
(860) 651-1333  Fax (860) 651-1888  Juris No. 407894

RETURN DATE: JULY 11, 2023           :     **SUPERIOR COURT**

**BAY ADVANCE, LLC**                 :     **J.D. OF STAMFORD/**
                                        :     **NORWALK**

**V.**                                        :     **AT STAMFORD**

**BARRY STUART HALAJIAN D/B/A**     :

**INDUSTRIAL ELECTRIC COMPANY**     :     **JUNE 9, 2023**

<u>**COMPLAINT**</u>

<u>**COUNT ONE:**</u>       **Breach of contract**

1.      Plaintiff, **BAY ADVANCE, LLC ("BAY ADVANCE")** has a place of business at 265 Tresser Blvd., Stamford, CT 06901.

2.      Defendant, **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY ("INDUSTRIAL ELECTRIC"),** has a place of business at 4974 Fresno St. Apt. 290, Fresno, CA 93726.

3.      BARRY STUART HALAJIAN owns, controls and does business under the name INDUSTRIAL ELECTRIC.

4.      On or about May 18, 2023, BAY ADVANCE, as buyer, and INDUSTRIAL ELECTRIC as seller, executed an Agreement (the "Agreement"), whereby INDUSTRIAL ELECTRIC promised to pay BAY ADVANCE a sum certain for future receivables, and other fees as more fully described therein. A true and accurate copy of the Agreement is attached hereto as **Exhibit A.** BARRY STUART HALAJIAN executed the Agreement and a personal guaranty in connection with the Agreement (the "Guaranty").

5.    BAY ADVANCE would not have entered the Agreement, but for the Guaranty.

6.    The Agreement is in default because of INDUSTRIAL ELECTRIC's failure to make the required payments, despite efforts to reconcile the payments by BAY ADVANCE. BARRY STUART HALAJIAN continues to operate INDUSTRIAL ELECTRIC.

7.    Section 4.13 of the Agreement contains a written waiver of prejudgment remedy, as follows:

> **Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH BA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENT AND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BA BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.

8.    The Agreement permits BAY ADVANCE to recover its attorneys' fees to enforce the Agreement.  INDUSTRIAL ELECTRIC consented to jurisdiction in Connecticut under the Agreement.

9.    As a direct result of the breach, BAY ADVANCE has suffered damages.

**WHEREFORE**, the Plaintiff claims the following relief:

1. Monetary damages;

2. Interest;

3. Attorneys' fees pursuant to the Agreement/Guaranty;

4. Costs of suit; and

5. Any and all other relief, legal or equitable, that the court deems just and proper.

THE PLAINTIFF,
BAY ADVANCE, LLC

By:

James E. Trudell, Esq.
Jared M. Alfin, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

RETURN DATE: JULY 11, 2023           :    SUPERIOR COURT

BAY ADVANCE, LLC                  :    J.D. OF STAMFORD/
                                     :    NORWALK

V.                                  :    AT STAMFORD

BARRY STUART HALAJIAN D/B/A       :

INDUSTRIAL ELECTRIC COMPANY      :    JUNE 9, 2023

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand in the above captioned action is greater than $15,000.00.

THE PLAINTIFF,
BAY ADVANCE, LLC

By:        _[signature]_

James E. Trudell, Esq.
Jared M. Alfin, Esq.
Hassett & George, P.C.
945 Hopmeadow Street
Simsbury, CT 06070
Telephone No.: (860) 651-1333
Facsimile No.: (860) 651-1888
Juris No. 407894

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

EXHIBIT "A"

# BAY ADVANCE

## FUTURE RECEIPTS SALE AGREEMENT

This FUTURE RECEIPTS SALE AGREEMENT ("Agreement") dated ____5/18/2023____ ____between BAY ADVANCE having a place of business in Connecticut ("BA") and the Merchant(s) listed below ("Merchant")

### Merchant Information:

| | |
|---|---|
| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
| Entity Type: SOLE PROP | EIN: 94-2782591 |
| State of Incorporation: CA | Phone Number: |
| Physical Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | Mailing Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 |

### Owner/Guarantor Information:

| Owner 1/Guarantor 1 | | |
|---|---|---|
| Full Name: BARRY S. HALAJIAN | Cell Phone: | Social Security #: 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 |
| Home Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | City/State: FRESNO, CA | Zip Code: 93726 |
| Ownership %: | Email: ieds@sbcglobal.net | DOB: 09/29/1959 |
| Owner 2/Guarantor 2 | | |
| Full Name: | Cell Phone: | Social Security #: |
| Home Address: | City/State: | Zip Code: |
| Ownership %: | Email: | DOB: |

### Purchase Detail:

| | | |
|---|---|---|
| Purchased Amount | $ 89,940.00 | The dollar value of future receipts. |
| Purchase Price | $ 60,000.00 | The dollar price the purchaser is paying for the amount sold. |
| Purchased Percent | 45% | Percentage of Future Receipts to be remitted to Purchaser |
| Processing Fee | UP TO 75% | The dollar amount to be deducted from Purchase Price for underwriting fees, broker fees, and related expenses. |
| Remittance Transaction Fee | $175.00 | The dollar amount to be deducted from Purchase Price for the transaction of ACH Remittance. |
| UCC Fee | $99.00 | The dollar amount to be deducted from Purchase Price for the UCC processing fee. |
| Wire Transaction Fee | $50.00 | Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH |
| Disbursement Amount to Merchant | $42,000.00 | Net of fees, discount, and direct payments |
| Remittance Choice | ACH | Remittance can occur via ACH, Bank Transfer, Bank Wire. |
| Payment Frequency | Daily | Daily (Each "Business Day" Monday through Friday excluding Federal Reserve Holidays) or Weekly |
| Remittance | $ 3,000.00 | Remittance amount of Future Receipts to be collected according to the Payment Frequency. |

### Default Details:

| | | |
|---|---|---|
| NSF Fee (Standard) | $35.00 | Each returned payment without notice is a default. |
| Rejected ACH/Blocked ACH/Default Fee | $5,000.00 | When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank account cutting us from our collections. |
| Attorney's Fee | TBD | BA shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal. BA shall also be permitted to collect its reasonably attorney's fees if BA refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor |
| Stacking Fee | $10,000.00 | If the Merchant takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 of the purchased amount will be added to the Merchants current balance. |

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

Merchant hereby sells, assigns and transfers to BA (making BA the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to BA

Merchant is selling a portion of a future revenue stream to BA at a discount, not borrowing money from BA, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BA. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BA is entering this Agreement knowing athe risks that Merchant's business may slow down or fail, and BA assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give BA a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

BA will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, BA (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as BA receives payment in full of the Purchased Amount. Merchant hereby authorizes BA to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. BA's payment of the Purchase Price shall be deemed the acceptance and performance by BA of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by BA remains in the Account and will be held responsible for any fees incurred by BA resulting from a rejected ACH attempt or an Event of Default. BA is not responsible for any overdrafts or rejected transactions that may result from BA's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between BA and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A; and are hereby agreed to by Merchant.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

_____
(Signature)

BARRY S. HALAJIAN
_____
(Name)

OWNER
_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

_____
(Signature)

BARRY S. HALAJIAN
_____
(Name)

OWNER
_____
(Title)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #2

Merchant Initials: **BH**

## MERCHANT AGREEMENT TERMS AND CONDITIONS

**1    TERMS OF ENROLLMENT IN PROGRAM**

1.1    **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to BA with a Bank acceptable to BA to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to BA with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide BA and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes BA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to BA for the receipts as specified herein and to pay such amounts to BA. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre-approved by BA or not. This additional authorization is not a waiver of BA's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which BA did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of BA.

1.2    **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BA as per the terms of this Agreement.

1.3    **Future Purchase of Increments.** Subject to the terms of this Agreement, BA offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. BA reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

1.4    **Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to BA after BA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to accounting@cavallicapital.com Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and CC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by BA within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank BAount so that the total amount debited by BA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with BA's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

1.5    **Adjustments to the Remittance.** As long as an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to BA to request a decrease in the Remittance. All requests hereunder must be in writing to accounting@cavallicapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and BA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide BA with viewing access to their bank account as well as all information reasonably requested by BA to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

1.6    **Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize BA and its agents to investigate their financial responsibility and history, and will provide to BA any authorizations, bank or financial statements, tax returns, etc., as BA deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. BA is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

1.7    **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide BA with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide BA with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from BA.

1.8    **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BA for monies owed to BA from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by BA.

1.9    **No Liability.** In no event will BA be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BA's attorney's fees and expenses resulting therefrom.

1.10    **Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BA, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

1.11    **Sale of Receipts.** Merchant and BA agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from BA to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. BA has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that BA has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BA shall promptly refund to Merchant any interest received by BA in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BA not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

1.12    **Power of Attorney.** Merchant irrevocably appoints BA as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BA from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BA; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which BA may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

1.13    **Protections Against Default.** The following Protections 1 through 8 may be invoked by BA immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have

**BAY ADVANCE- #3**                                                                                       Merchant Initials

an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BA electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to BA; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of BA, and (ii) the written agreement of any BA or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BA; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide BA with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from BA, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to BA at law, in equity or otherwise pursuant to this Agreement.

**Protection 1**. The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2**. BA may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3**. BA may enforce its security interest in the Collateral.

**Protection 4.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to BA from Merchant.

**Protection 5.** BA may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if BA recovers a Judgment against Merchant, Merchant shall be liable for all of BA's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 6.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to BA. Upon breach of any provision in this Agreement, BA may exercise its rights under this Assignment of Lease without prior Notice to Merchant.

**Protection 7.** BA may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to BA.

1.14 **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes BA to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that BA obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against BA or any of its affiliates relating to any (i)investigation undertaken by or on behalf of BA as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15 **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by BA, including this Agreement and any other BA documents (collectively, "Confidential Information") are proprietary and confidential information of BA. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BA to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles BA to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.16 **Publicity**. Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes BA to use its, his or her name in listings of clients and in advertising and marketing materials.

1.17 **D/B/A's.** Merchant hereby acknowledges and agrees that BA may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BA and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## 2    REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1 **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to BA, and future statements which will be furnished hereafter at the discretion of BA, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise BA of any material adverse change in their financial condition, operation or ownership. BA may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to BA within five business days after request from BA. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

2.2 **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3 **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4 **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5 **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BA's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6 **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BA, nor shall Merchant change any of its places of business without prior written consent by BA.

2.7 **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis if applicable.

2.8 **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from BA to Merchant, execute, acknowledge and deliver to BA and/or to any other person, firm or corporation specified by BA, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9 **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10 **Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BA.

2.11 **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12 **Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

2.13 **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling BA the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

BAY ADVANCE- #4                                                                                          Merchant Initials: **BH**

**3        EVENTS OF DEFAULT AND REMEDIES**

3.1        **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)        Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)        Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)        the sending of notice of termination by Merchant or verbally notifying BA of its intent to breach this Agreement;

(d)        the Merchant fails to give BA 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(f)        Merchant shall transfer or sell all or substantially all of its assets;

(g)        Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)        Merchant shall use multiple depository accounts without the prior written consent of BA

(i)        Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)        Merchant shall change its depositing account without the prior written consent of BA; or

(k)        Merchant shall close its depositing account used for ACH debits without the prior written consent of BA

(l)        Merchant's bank returns a code other than NSF cutting BA from its collections

(m)        Merchant shall default under any of the terms, covenants and conditions of any other agreement with BA.

3.2        **Limited Personal Guaranty** The Personal Guaranty that is executed in connection with this Agreement is a limited and non-recourse guaranty in that Guarantor shall not be liable hereunder if Merchant ceases operations/goes out of business.

3.3        **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, BA may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing of an ex-parte prejudgment remedy, and/or enforcing the Security Agreement contained herein. All rights, powers and remedies of BA in connection with this Agreement may be exercised at any time by BA after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.4        **Costs.** Merchant shall pay to BA all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of BA's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

3.5        **Required Notifications.** Merchant is required to give BA written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BA seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4        MISCELLANEOUS**

4.1        **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BA.

4.2        **Assignment.** BA may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3        **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to BA shall become effective only upon receipt by BA. Notices to Merchant shall become effective three days after mailing.

4.4        **Waiver Remedies.** No failure on the part of BA to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5        **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BA which consent may be withheld in BA's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State Connecticut. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall be, if BA so elects, instituted in any Connecticut state court sitting in the county of Fairfield, without regard to conflict of law provisions (together the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes and/or litigation arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and irrevocably waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum. Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by BA by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

4.6        **Survival of Representation,** etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7        **Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

4.8        **Severability.** In case any of the provisions in this Agreement or any security or guaranty of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9        **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and BA and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10        **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11        **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12        **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13        **Prejudgment Remedy Waiver.** EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER

BAY ADVANCE- #5                                                        Merchant Initial

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH BA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BA BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.

AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT BA MAY ATTACH OR GARNISH ANY AND ALL OF MERCHANT AND GUARANTOR'S MONEY HELD IN ANY BANK ABAOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE/AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.

THE PARTIES HERETO AGREE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF THEIR OWN CHOOSING WITH RESPECT TO THE TERMS AND CONDITIONS HEREIN AS WELL AS THEIR MEANING.

MERCHANT AND GUARANTOR HAVE THE RIGHT TO CHALLENGE ANY PREJUDGEMENT ATTACHMENT OR GARNISHMENT IN ACCORDANCE WITH CONNECTICUT LAW.

BAY ADVANCE- #6

Merchant Initial: *BH*

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## SECURITY AGREEMENT AND GUARANTY

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PEFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Physical Address: 4974 N FRESNO ST APT 290 , FRESNO CA 93726 | EIN: 94-2782591 |

## SECURITY AGREEMENT

**Security Interest.** This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BA a security interest in and lien upon all of their present and future: (a) accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BA under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to BA upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BA's entitlements under this Agreement, BA is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of BA's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BA or an affiliate of BA. BA is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. BA shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BA has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, BA will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BA written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BA is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BA. Merchant and Guarantor(s) agree(s) to execute and deliver to BA such instruments and documents BA may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BA is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BA under any other agreement between Merchant or Guarantor(s) and BA (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BA deems necessary to perfect or maintain BA's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BA to file any financing statements deemed necessary by BA to perfect or maintain BA's security interest. Merchant and Guarantor(s) shall be liable for, and BA may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BA in protecting, preserving and enforcing BA's security interest and rights.

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** BA shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, BA may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BA may enter into an agreement with Merchant's landlord giving BA the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, BA may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to BA, whether by acceleration or otherwise.

## GUARANTY OF PERFORMANCE

As an additional inducement for BA to enter into this Agreement, the undersigned Guarantor(s) hereby provides BA with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to BA in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, BA may seek recovery from Guarantors for all of BA's losses and damages by enforcement of BA's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral BA may hold pursuant to this Agreement or any other guaranty.

BA does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)      Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) BA's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BA. In addition, BA may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BA; (ii) release Merchant from its obligations to BA; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations

BAY ADVANCE- #7                                                            Merchant Initials: **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

to BA under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BA must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (iii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.


ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

_____
(Signature)

BARRY S. HALAJIAN
(Name)

_____
(Title)

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
(SSN)

_____
(Driver's License)


ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

_____
(Signature)

BARRY S. HALAJIAN
(Name)

_____
(Title)

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
(SSN)

_____
(Driver's License)


ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

_____
(SSN)

_____
(Driver's License)


ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

_____
(SSN)

_____
(Driver's License)


BAY ADVANCE- #8

Merchant Initial **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS)

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | | Tax ID: 94-2782591 |
|---|---|---|

Merchant Agreement: Merchant Agreement between BA, and Merchant, dated as of: 5/18/2023

Please Indicated your designated checking account:

| Bank Name: CHASE | Routing: 322271627 | Account: 288822536 |
|---|---|---|
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), and Check Debit is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes BA, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. By signing below, Merchant also authorizes BA to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:

**In the amount of: 3,000.00**
**Or percentage of each banking deposit: 45%**
**On the following days: MONDAY - FRIDAY**

If any payment date falls on a weekend or Holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds. Merchant understands that BA may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes BA to initiate ACH entries to correct any erroneous payment transaction. If the Merchant has paid BA back in full without any missed payments, Merchant will be entitled to a rebate of four (4) payments.

**MISCELLANEOUS.** BA is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until BA has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford BA a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

ACCEPTED AND AGREED
**FOR THE MERCHANT (#1)**                    *Barry Hajar*

_____
(Signature)

**BARRY S. HALAJIAN**
(Name)

_____
(Title)

ACCEPTED AND AGREED
**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

ACCEPTED AND AGREED
**FOR THE OWNER/GUARANTOR (#1)**                    *Barry Hajar*

_____
(Signature)

**BARRY S. HALAJIAN**
(Name)

_____
(Title)

ACCEPTED AND AGREED
**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #9                                      Merchant Initials *BH*

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from BA. We look forward to being your funding partner for as long as you need.

**Daily ACH Program:**

BA, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

BA will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank: **Chase**

Bank portal website: **Chase.com**

Username: Berrys56chevey

Password: GE67cr132Size4#

Security Question / Answer 1: N/A

Security Question / Answer 2: N/A

Security Question / Answer 3: N/A

Any other information necessary to access your account: No

ACCEPTED AND AGREED
**FOR THE MERCHANT (#1)**

_(signature)_

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

ACCEPTED AND AGREED
**FOR THE OWNER/GUARANTOR (#1)**

_(signature)_

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

ACCEPTED AND AGREED
**FOR THE MERCHANT (#2)**

(Signature)

(Name)

(Title)

ACCEPTED AND AGREED
**FOR THE OWNER/GUARANTOR (#2)**

(Signature)

(Name)

(Title)

BAY ADVANCE- #10

Merchant Initial _BH_

## __Emergency Contacts__

Four valid emergency contacts are required to receive funding. Contacts will be verified.

Name;_____

Relation;_____

Phone Number;_____

Email Address;_____


Name:_____

Relation;_____

Phone Number;_____

Email Address;_____


Name;_____

Relation;_____

Phone Number;_____

Email Address;_____


Name;_____

Relation;_____

Phone Number;_____

Email Address;_____


BAY ADVANCE- #11                                              Merchant Init

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

**Dropbox** Sign                                                        Audit trail

| | |
|---|---|
| **Title** | BAY ADVANCE - BARRY S HALAJIAN |
| **File name** | BAY ADVANCE - BARRY STUART HALAJIAN.docx |
| **Document ID** | 6401d121b3c9429127527c0a23ffde4b6c87ff0d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | • Signed |

## Document History

**SENT**
05 / 18 / 2023
20:45:51 UTC
Sent for signature to BARRY S. HALAJIAN (ieds@sbcglobal.net)
from admin@bayadvancellc.com
IP: 175.176.87.59

**VIEWED**
05 / 18 / 2023
20:49:29 UTC
Viewed by BARRY S. HALAJIAN (ieds@sbcglobal.net)
IP: 73.66.211.166

**SIGNED**
05 / 18 / 2023
20:52:05 UTC
Signed by BARRY S. HALAJIAN (ieds@sbcglobal.net)
IP: 73.66.211.166

**COMPLETED**
05 / 18 / 2023
20:52:05 UTC
The document has been completed.

Powered by **Dropbox** Sign

State of Connecticut   )
                       )   ss. Hartford          June 14, 2023
County of Hartford     )

Then and by virtue hereof and by direction of the plaintiff's attorney, and a WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS and to me directed and delivered, I garnished to the value of *EIGHTY FIVE THOUSAND NINE HUNDRED FORTY 00/100 ($85,940.00) DOLLARS*, all goods, effects and money or credits due to the defendants, **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY,** and in the hands or possession of the within named garnishee, JPMORGAN CHASE BANK, N.A., at 109 New London Turnpike, in the Town of Glastonbury, by leaving it with Marlyn Montanez, who is duly authorized to accept service for the within named garnishee, a verified true and attested copy of CERTIFICATE OF ATTACHMENT, WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND AND EXHIBITS.

The within are verified true and attested copies of the original CERTIFICATE OF ATTACHMENT, WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, AFFIDAVIT IN SUPPORT OF PREJUDGMENT REMEDY AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS with my doings hereon endorsed.

Attest:

Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

CERTIFICATE OF PREJUDGMENT ATTACHMENT
Pursuant to C.G.S. § 52-278f

State of Connecticut )
                     )    ss. Hartford                June 14, 2023
County of Hartford   )

THIS MAY CERTIFY that I have this date, by virtue of a WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS and the plaintiff's attorney, and to me directed and delivered, returnable to the Superior Court at Stamford bearing Return Date July 11, 2023,

NAMING **BAY ADVANCE, LLC,** PLAINTIF
AND AGAINST **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY,** DEFENDANTS

AND IN WHICH *EIGHTY FIVE THOUSAND NINE HUNDRED FORTY 00/100 ($85,940.00) DOLLARS*

Damages and costs of suit are claimed, made an attachment of all goods, accounts, property, and estate of the defendants and said **garnishee shall disclose on oath whether they have concealed in its hands the goods or estate of the said defendants, or are indebted to the defendants.**

SEE ATTACHED

Attest:

Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

A TRUE COPY
ATTEST:

ELIZABETH J. OSTROWSKI
CONNECTICUT STATE MARSHAL
AN INDIFFERENT PERSON

I, Elizabeth J. Ostrowski, am a State Marshal for Hartford County in the State of Connecticut and am authorized to serve civil process in this state.

In accordance with Connecticut General Statute § 52-59b, on 6/15/23, I served a verified true and attested copy of the original WRIT, SUMMONS, AND DIRECTION FOR ATTACHMENT AND GARNISHMENT, NOTICE OF EX PARTE PREJUDGMENT REMEDY FOR ATTACHMENT/CLAIM FOR HEARING TO DISSOLVE OR MODIFY, APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY, AFFIDAVIT OF DEBT AND EXHIBITS, COMPLAINT, STATEMENT OF AMOUNT IN DEMAND, AND EXHIBITS, with a return of my doings thereon endorsed, upon the Secretary of State of Connecticut, 165 Capitol Avenue, Hartford, Connecticut, statutory agent for the within named defendant, BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY.

Attest:

Elizabeth J. Ostrowski
Connecticut State Marshal
Hartford County

# EXHIBIT B

# James E. Trudell



Attorney
Location:
Simsbury, CT
Phone:
860-651-1333 Ext. 151
Fax:
860-651-1888
Email:
Email Me
vCard:

James Trudell specializes in litigation and handles matters in a variety of areas. He is well-versed in commercial collections and enjoys the fast-paced nature of the practice. In addition to commercial collections, James works on landlord tenant and other civil litigation cases.

Prior to attending law school, James had a career in compliance and risk management, working with insurance and financial services companies.

James was admitted to the Connecticut bar in 2008, the U.S. District Court, District of Connecticut in 2009 and the Massachusetts bar in 2021.

James is a 1995 graduate of the University of Connecticut, where he double majored in Sociology and Political Science and was the Captain of the Division I Varsity Swim Team. He obtained his JD from Florida Coastal School of Law in 2008.

A competitor by nature, James has participated in multiple marathons and triathlons. He is an avid boater and skier.

## Areas Of Practice

- Civil Litigation
- Business Litigation
- Commercial Collections

## Bar Admissions

- Connecticut
- U.S. District Court District of Connecticut
- Massachusetts

## Education

- **Florida Coastal School of Law, Jacksonville, FL**
  - J.D. – 2008
- **University of Connecticut, Storrs, CT**
  - B.A. – 1995

## Professional Associations and Memberships

- Connecticut Bar Association
- BNI Western New England

### Practice Areas

- Family
- Business & Commercial Law
- Criminal
- Personal Injury
- Real Estate And Land Use
- Trusts And Estates
- Litigation
- Representation Of Municipalities & Public Officials
- Insurance
- Labor & Employment
- Commercial Collections
- Regulatory Law

# EXHIBIT C

| RETURN DATE: JULY 11, 2023 | : | SUPERIOR COURT |
| BAY ADVANCE, LLC | : | J.D. OF STAMFORD/ |
| | : | NORWALK |
| V. | : | AT STAMFORD |
| BARRY STUART HALAJIAN D/B/A | : | |
| INDUSTRIAL ELECTRIC COMPANY | : | JUNE 9, 2023 |

## APPLICATION FOR EX-PARTE PREJUDGMENT REMEDY

TO THE SUPERIOR COURT FOR THE JUDICIAL DISTRICT OF STAMFORD/NORWALK AT STAMFORD:

The undersigned represents as follows:

1.    Pursuant to the attached signed Writ, Summons, Complaint, and Affidavit, the Plaintiff, **BAY ADVANCE, LLC**, which has a place of business in Stamford, Connecticut and is registered in Connecticut, is about to commence an action against Defendant, **BARRY STUART HALAJIAN D/B/A INDUSTRIAL ELECTRIC COMPANY**, having a residence at 4974 Fresno St. Apt. 290, Fresno, CA 93726 and;

2.    That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and to secure such judgment the applicant seeks an ex-parte prejudgment remedy to secure the sum of **$85,940.00.**

# EXHIBIT D

# BAY ADVANCE

## FUTURE RECEIPTS SALE AGREEMENT

This FUTURE RECEIPTS SALE AGREEMENT ("Agreement") dated_____5/18/2023_____between BAY ADVANCE having a place of business in Connecticut  ("**BA**") and the Merchant(s) listed below (**Merchant**")

**Merchant Information:**

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A:  INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Entity Type:  SOLE PROP | EIN:  94-2782591 |
| State of Incorporation: CA | Phone Number: |
| Physical Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | Mailing Address:  4974 FRESNO ST APT 290, FRESNO CA 93726 |

**Owner/Guarantor Information:**

| Owner 1/Guarantor 1 | | |
|---|---|---|
| Full Name: BARRY S. HALAJIAN | Cell Phone: | Social Security #: 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 |
| Home Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | City/State: FRESNO, CA | Zip Code: 93726 |
| Ownership %: | Email: **ieds@sbcglobal.net** | DOB: 09/29/1959 |
| Owner 2/Guarantor 2 | | |
| Full Name: | Cell Phone: | Social Security #: |
| Home Address: | City/State: | Zip Code: |
| Ownership %: | Email: | DOB: |

**Purchase Detail:**

| Purchased Amount | $ 89,940.00 | The dollar value of future receipts. |
|---|---|---|
| Purchase Price | $ 60,000.00 | The dollar price the purchaser is paying for the amount sold. |
| Purchased Percent | 45% | Percentage of Future Receipts to be remitted to Purchaser |
| Processing Fee | UP TO 75% | The dollar amount to be deducted from Purchase Price for underwriting fees, broker fees, and related expenses. |
| Remittance Transaction Fee | $175.00 | The dollar amount to be deducted from Purchase Price for the transaction of ACH Remittance. |
| UCC Fee | $99.00 | The dollar amount to be deducted from Purchase Price for the UCC processing fee. |
| Wire Transaction Fee | $50.00 | Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH |
| **Disbursement Amount to Merchant** | | **Net of fees, discount, and direct payments** |
| Remittance Choice | ACH | Remittance can occur via ACH, Bank Transfer, Bank Wire. |
| Payment Frequency | Daily | Daily (Each "Business Day" Monday through Friday excluding Federal Reserve Holidays) or Weekly |
| Remittance | $ 3,000.00 | Remittance amount of Future Receipts to be collected according to the Payment Frequency. |

**Default Details:**

| NSF Fee (Standard) | $35.00 | Each returned payment without notice is a default. |
|---|---|---|
| Rejected ACH/Blocked ACH/Default Fee | $5,000.00 | When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank account cutting us from our collections. |
| Attorney's Fee | TBD | BA shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal.  BA shall also be permitted to collect its reasonably attorney's fees if BA refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor |
| Stacking Fee | $10,000.00 | If the Merchant takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 of the purchased amount will be added to the Merchants current balance. |

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

Merchant hereby sells, assigns and transfers to BA (making BA the absolute owner) in consideration of the "Purchase Price" specified above, the Purchased Percentage of all of Merchant's Future Receipts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the " Future Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment deposited into Merchants Bank Account), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the "Purchased Amount has been delivered by or on behalf of Merchant to BA

Merchant is selling a portion of a future revenue stream to BA at a discount, not borrowing money from BA, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by BA. The Remittance is a good faith estimate of Purchased Percentage multiplied by revenues of Merchant. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. BA is entering this Agreement knowing athe risks that Merchant's business may slow down or fail, and BA assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give BA a reasonable and fair opportunity to receive the benefit of its bargain. Merchant and Guarantor are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount. The initial Remittance shall be as described above. The Remittance is subject to adjustment as set forth in Paragraph 1.4 and Paragraph 1.5.

BA will debit the Remittance each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, BA (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as BA receives payment in full of the Purchased Amount. Merchant hereby authorizes BA to ACH debit the initial Remittance from the Account on the agreed upon Payment Frequency; a daily basis means any day that is not a United States banking holiday. BA's payment of the Purchase Price shall be deemed the acceptance and performance by BA of this Agreement. Merchant understands that it is responsible for ensuring that the initial Remittance to be debited by BA remains in the Account and will be held responsible for any fees incurred by BA resulting from a rejected ACH attempt or an Event of Default. BA is not responsible for any overdrafts or rejected transactions that may result from BA's ACH debiting the Agreed Remittance under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between BA and Merchant, upon the occurrence of an Event of Default of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Purchased Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A; and are hereby agreed to by Merchant.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

_____
(Signature)

 BARRY S. HALAJIAN_____
(Name)

 OWNER_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

_____
(Signature)

 BARRY S. HALAJIAN_____
(Name)

 OWNER_____
(Title)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #2

Merchant Initials: BH

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## MERCHANT AGREEMENT TERMS AND CONDITIONS

**1    TERMS OF ENROLLMENT IN PROGRAM**

1.1    **Merchant Deposit Agreement and Processor.** Merchant shall (A) execute an agreement acceptable to BA with a Bank acceptable to BA to obtain electronic fund transfer services for the Account, and (B) if applicable, execute an agreement acceptable to BA with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide BA and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes BA and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to BA for the receipts as specified herein and to pay such amounts to BA. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether pre- approved by BA or not. This additional authorization is not a waiver of BA's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which BA did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of BA.

1.2    **Term of Agreement.** This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by BA as per the terms of this Agreement.

1.3    **Future Purchase of Increments.** Subject to the terms of this Agreement, BA offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. BA reserves the right to delay or rescind the offer to purchase any Increment or any additional Receipts, in its sole and absolute discretion.

1.4    **Reconciliation.** As long as an Event of Default, or breach of this Agreement, has not occurred, once per calendar month Merchant may request a retroactive reconciliation of the total Remittance Amount(for the purposes of this Agreement "total Remittance Amount" shall be defined as all payments made by Merchant to BA after BA remitted the Purchase Price to Merchant). All requests hereunder must be in writing to accounting@cavallicapital.com Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report if applicable, for the requested month. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and CC shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by BA within five (5) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank BAount so that the total amount debited by BA shall equal the Specific Percentage of the Future Receipts that Merchant Collected from the date of this Agreement up to and including the date of the Reconciliation request. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with BA's right and ability to debit Merchant's Account while the Request is pending or to unilaterally modify the initial Remittance amount, in any method other than the ones listed in this Agreement.

1.5    **Adjustments to the Remittance.** As long an Event of Default, or breach of this Agreement, has not occurred and should the Merchant experience a decrease in its' Future Receipts, Merchant may give notice to BA to request a decrease in the Remittance. All requests hereunder must be in writing to accounting@cavallicapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable reports for the requested period. BA retains the right the request additional documentation such as bank login or DecisionLogic access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and BA shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks or by other means that can more accurately estimate the Merchant's Future Receipts. Merchant shall provide BA with viewing access to their bank account as well as all information reasonably requested by BA to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

1.6    **Financial Condition.** Merchant and Guarantor(s) (as hereinafter defined and limited) authorize BA and its agents to investigate their financial responsibility and history, and will provide to BA any authorizations, bank or financial statements, tax returns, etc., as BA deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. BA is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

1.7    **Transactional History.** Merchant authorizes all of its banks, brokers and processor to provide BA with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide BA with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from BA.

1.8    **Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by BA for monies owed to BA from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by BA.

1.9    **No Liability.** In no event will BA be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of BA's attorney's fees and expenses resulting therefrom.

1.10    **Reliance on Terms.** Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, BA, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank is not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

1.11    **Sale of Receipts.** Merchant and BA agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from BA to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. BA has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to BA in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that BA has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and BA shall promptly refund to Merchant any interest received by BA in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that BA not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

1.12    **Power of Attorney.** Merchant irrevocably appoints BA as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to BA from Processor, or in the case of a violation by Merchant of Section 1 or the occurrence of an Event of Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to BA; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which BA may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by merchant.

1.13    **Protections Against Default.** The following Protections 1 through 8 may be invoked by BA immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have

BAY ADVANCE- #3                                                                                              Merchant Initials: **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the BA electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to BA; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of BA, and (ii) the written agreement of any BA or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to BA; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; (f) Merchant fails to provide BA with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from BA, or (g) Merchant breaches any terms of this Agreement, including but not limited any of the Events of Default contained in Section 3.1 herein. These protections are in addition to any other remedies available to BA at law, in equity or otherwise pursuant to this Agreement.

**Protection 1**. The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately.

**Protection 2**. BA may enforce the provisions of the Limited Personal Guaranty of Performance against the Guarantor(s).

**Protection 3**. BA may enforce its security interest in the Collateral.

**Protection 4.** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to BA from Merchant.

**Protection 5.** BA may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if BA recovers a Judgment against Merchant, Merchant shall be liable for all of BA's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs.

**Protection 6.** This Agreement shall be deemed Merchant's Assignment of Merchant's Lease of Merchant's business premises to BA. Upon breach of any provision in this Agreement, BA may exercise its rights under this Assignment of Lease without prior Notice to Merchant.

**Protection 7.** BA may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to BA.

1.14     **Protection of Information.** Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes BA to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that BA obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against BA or any of its affiliates relating to any (i)investigation undertaken by or on behalf of BA as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

1.15     **Confidentiality.** Merchant understands and agrees that the terms and conditions of the products and services offered by BA, including this Agreement and any other BA documents (collectively, "Confidential Information") are proprietary and confidential information of BA. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of BA to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles BA to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

1.16     **Publicity**. Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes BA to use its, his or her name in listings of clients and in advertising and marketing materials.

1.17     **D/B/A's.** Merchant hereby acknowledges and agrees that BA may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between BA and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**2        REPRESENTATIONS, WARRANTIES AND COVENANTS**
Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

2.1     **Financial Condition and Financial Information.** Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to BA, and future statements which will be furnished hereafter at the discretion of BA, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise BA of any material adverse change in their financial condition, operation or ownership. BA may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to BA within five business days after request from BA. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

2.2     **Governmental Approvals.** Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

2.3     **Authorization.** Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

2.4     **Use of Funds.** Merchant agrees that it shall use the Purchase Price for business purposes and not for personal, family, or household purposes.

2.5     **Electronic Check Processing Agreement.** Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without BA's prior written consent. Any such changes shall be a material breach of this Agreement.

2.6     **Change of Name or Location.** Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and BA, nor shall Merchant change any of its places of business without prior written consent by BA.

2.7     **Daily Batch Out.** Merchant will batch out receipts with the Processor on a daily basis ifapplicable.

2.8     **Estoppel Certificate.** Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from BA to Merchant, execute, acknowledge and deliver to BA and/or to any other person, firm or corporation specified by BA, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

2.9     **No Bankruptcy.** As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

2.10     **Unencumbered Receipts**. Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of BA.

2.11     **Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

2.12     **Defaults under Other Contracts.** Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

2.13     **Good Faith.** Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling BA the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

BAY ADVANCE- #4                                                                                                Merchant Initials: **BH**

**3**      **EVENTS OF DEFAULT AND REMEDIES**

3.1    **Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder:

(a)    Merchant or Guarantor shall violate any term or covenant in this Agreement;

(b)    Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made;

(c)    the sending of notice of termination by Merchant or verbally notifying BA of its intent to breach this Agreement;

(d)    the Merchant fails to give BA 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored by Merchant's bank, and the Merchant fails to supply all requested documentation and allow for daily and/or real time monitoring of its bank account;

(f)    Merchant shall transfer or sell all or substantially all of its assets;

(g)    Merchant shall make or send notice of any intended bulk sale or transfer by Merchant;

(h)    Merchant shall use multiple depository accounts without the prior written consent of BA

(i)    Merchant shall enter into any financing agreements with any other party including but not limited to: Loans, Merchant Cash Advances, Receivables financing, or any other agreement that will increase the total debt owed by Merchant to any other party.

(j)    Merchant shall change its depositing account without the prior written consent of BA; or

(k)    Merchant shall close its depositing account used for ACH debits without the prior written consent of BA

(l)    Merchant's bank returns a code other than NSF cutting BA from its collections

(m)    Merchant shall default under any of the terms, covenants and conditions of any other agreement with BA.

3.2    **Limited Personal Guaranty** The Personal Guaranty that is executed in connection with this Agreement is a limited and non-recourse guaranty in that Guarantor shall not be liable hereunder if Merchant ceases operations/goes out of business.

3.3    **Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, BA may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy, including but not limited to filing of an ex-parte prejudgment remedy, and/or enforcing the Security Agreement contained herein. All rights, powers and remedies of BA in connection with this Agreement may be exercised at any time by BA after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

3.4    **Costs.** Merchant shall pay to BA all reasonable costs associated with (a) an Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and(c) the enforcement of BA's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

3.5    **Required Notifications.** Merchant is required to give BA written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give BA seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

**4**      **MISCELLANEOUS**

4.1    **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by BA.

4.2    **Assignment.** BA may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

4.3    **Notices.** All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to BA shall become effective only upon receipt by BA. Notices to Merchant shall become effective three days after mailing.

4.4    **Waiver Remedies.** No failure on the part of BA to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

4.5    **Binding Effect;** Governing Law, Venue and Jurisdiction. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of BA which consent may be withheld in BA's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the State Connecticut. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall be, if BA so elects, instituted in any Connecticut state court sitting in the county of Fairfield, without regard to conflict of law provisions (together the "Acceptable Forum"). The parties agree that the Acceptable Forum shall be the sole and exclusive forum for any and all disputes and/or litigation arising out of or relating to this Agreement and the Parties agree that the Acceptable Forum is convenient and submit to the jurisdiction of the Acceptable Forum and irrevocably waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum. Merchant and Guarantor hereby agree that the mailing of any Summons and Complaint in any proceeding commenced by BA by certified or registered mail, return receipt requested to the Mailing Address listed on this Agreement, or via email to the Email Address listed on this Agreement, or any other process required by any such court will constitute valid and lawful service of process against them without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

4.6    **Survival of Representation**, etc. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

4.7    **Interpretation.** All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

4.8    **Severability**. In case any of the provisions in this Agreement or any security or guaranty of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

4.9    **Entire Agreement.** Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and BA and supersede all prior agreements and understandings relating to the subject matter hereof.

4.10    **JURY TRIAL WAIVER.** THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING INCONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THEENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

4.11    **CLASS ACTION WAIVER.** THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND ( 2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

4.12    **Facsimile & Digital Acceptance.** Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

4.13    **Prejudgment Remedy Waiver. EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER**

BAY ADVANCE- #5                                                            Merchant Initials: BH

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION, HEREBY ACKNOWLEDGE THAT THE TRANSACTION OF WHICH THIS AGREEMENT IS A PART IS A COMMERCIAL TRANSACTION, AND TO THE EXTENT ALLOWED UNDER CONNECTICUT GENERAL STATUTES SECTIONS 52-278a TO 52-278m, INCLUSIVE, OR BY OTHER APPLICABLE LAW EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT HEREBY WAIVE (A) ALL RIGHTS TO NOTICE AND PRIOR COURT HEARING OR COURT ORDER IN CONNECTION WITH ANY AND ALL PREJUDGMENT REMEDIES TO WHICH BA MAY BECOME ENTITLED BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY AGREEMENT SECURING THIS AGREEEMENTAND (B) ALL RIGHTS TO REQUEST THAT UF POST A BOND, WITH OR WITHOUT SURETY, TO PROTECT SAID MERCHANT OR GUARANTOR AGAINST DAMAGES THAT MAY BE CAUSED BY ANY PREJUDGMENT REMEDY SOUGHT OR OBTAINED BY BA BY VIRTUE OF ANY DEFAULT OR PROVISION OF THIS AGREEMENT OR SECURITY OR GUARANTY AGREEMENT SECURING THIS AGREEMENT.

AS A CONDITION OF THIS AGREEMENT AND AS PART OF THE SAID PREJUDGMENT REMEDY WAIVER ABOVE, BUT NOT AN EXCLUSIVE REMEDY, EACH AND EVERY MERCHANT AND GUARANTOR OF THIS AGREEMENT, AND EACH OTHER PERSON OR ENTITY WHO MAY BECOME LIABLE FOR ALL OR ANY PART OF THIS OBLIGATION HEREBY ACKNOWLEDGE, UNDERSTAND, AGREE AND CONSENT THAT BA MAY ATTACH OR GARNISH ANY AND ALL OF MERCHANT AND GUARANTOR'S MONEY HELD IN ANY BANK ABAOUNT AT ANY BANKING INSTITUTION IF THAT BANKING INSTITUTION HAS A BRANCH OR OFFICE PHYSICALLY LOCATED IN CONNECTICUT AND/OR IS REGISTERED WITH THE SECRETARY OF STATE/AUTHORIZED TO CONDUCT BUSINESS IN CONNECTICUT.

THE PARTIES HERETO AGREE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL OF THEIR OWN CHOOSING WITH RESPECT TO THE TERMS AND CONDITIONS HEREIN AS WELL AS THEIR MEANING.

MERCHANT AND GUARANTOR HAVE THE RIGHT TO CHALLENGE ANY PREJUDGEMENT ATTACHMENT OR GARNISHMENT IN ACCORDANCE WITH CONNECTICUT LAW.

BAY ADVANCE- #6

Merchant Initials:

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## SECURITY AGREEMENT AND GUARANTY

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY OF PEFORMANCE. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Physical Address: 4974 N FRESNO ST APT 290 , FRESNO CA 93726 | EIN: 94-2782591 |

## SECURITY AGREEMENT

**Security Interest**. This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to BA a security interest in and lien upon all of their present and future: (a)  accounts (the "Accounts Collateral"), chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to BA under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Collateral "). Merchant agrees to provide other security to BA upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover BA's entitlements under this Agreement, BA is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Collateral. These security interests and liens will secure all of BA's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, BA or an affiliate of BA. BA is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by BA without notice or demand of any kind by making an immediate withdrawal or freezing the Collateral. BA shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as amended from time to time, BA has control over and may direct the disposition of the Collateral, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Collateral.

With respect to such security interests and liens, BA will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from BA written consent prior to granting a security interest of any kind in the Collateral to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and BA is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Collateral. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by BA. Merchant and Guarantor(s) agree(s) to execute and deliver to BA such instruments and documents BA may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. BA is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to BA under any other agreement between Merchant or Guarantor(s) and BA (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as BA deems necessary to perfect or maintain BA's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes BA to file any financing statements deemed necessary by BA to perfect or maintain BA's security interest. Merchant and Guarantor(s) shall be liable for, and BA may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by BA in protecting, preserving and enforcing BA's security interest and rights.

**Negative Pledge**. Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**. BA shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, BA may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that BA may enter into an agreement with Merchant's landlord giving BA the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**. Upon any Event of Default, BA may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to BA, whether by acceleration or otherwise.

## GUARANTY OF PERFORMANCE

As an additional inducement for BA to enter into this Agreement, the undersigned Guarantor(s) hereby provides BA with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to BA in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

Guarantor Waivers. In the event of a breach of the above, BA may seek recovery from Guarantors for all of BA's losses and damages by enforcement of BA's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral BA may hold pursuant to this Agreement or any other guaranty.

BA does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of:

(i)      Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) BA's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to BA. In addition, BA may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to BA; (ii) release Merchant from its obligations to BA; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations

BAY ADVANCE- #7                                                                                          Merchant Initials: **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

to BA under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that BA must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

Guarantor Acknowledgement. Guarantor acknowledges that: (i) He/She is bound by the Prejudgment Remedy Waiver and Class Action Waiver provisions in the Merchant Agreement Terms and Conditions, as well as all other terms and conditions therein, which are incorporated herein by reference; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iv) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

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
(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**

(Signature)

BARRY S. HALAJIAN
(Name)

(Title)

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
(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

(Signature)

(Name)

(Title)

(SSN)

(Driver's License)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

(Signature)

(Name)

(Title)

(SSN)

(Driver's License)

BAY ADVANCE- #8

Merchant Initials. BH

## AUTHORIZATION AGREEMENT FOR DIRECT DEPOSIT (ACH CREDIT) AND DIRECT PAYMENTS (ACH DEBITS

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | Tax ID: 94-2782591 |
|---|---|

Merchant Agreement: Merchant Agreement between BA, and Merchant, dated as of: 5/18/2023

Please Indicated your designated checking account:

| Bank Name: CHASE | Routing: 322271627 | Account: 288822536 |
|---|---|---|
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |
| Bank Name: | Routing: | Account: |

Capitalized terms used in this Authorization Agreement without definition shall have the meanings set forth in the Merchant Agreement.

By signing below, Merchant attests that the Designated Checking Account was established for business purposes and not primarily for personal, family or household purposes. **This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), and Check Debit is part of (and incorporated by reference into) the Merchant Agreement. Merchant should keep a copy of this important legal document for Merchant's records.**

**DISBURSEMENT OF ADVANCE PROCEEDS.** By signing below, Merchant authorizes BA, to disburse the Advance proceeds less the amount of any applicable fees upon Advance approval by initiating ACH credits to the Designated Checking Account, in the amounts and at the times specified in the Merchant Agreement. **By signing below, Merchant also authorizes BA to collect amounts due from Merchant under the Merchant Agreement by initiating ACH debits to the Designated Checking Account, as follows:**

**In the amount of: 3,000.00**
**Or percentage of each banking deposit: 45%**
**On the following days: MONDAY - FRIIDAY**

If any payment date falls on a weekend or Holiday, I understand and agree that the payment may be executed on the next business day. If a payment is rejected by Merchant's financial institution for any reason, including without limitation insufficient funds, Merchant understands that BA may, at its discretion, attempt to process the payment again as permitted under applicable ACH rules. Merchant also authorizes BA to initiate ACH entries to correct any erroneous payment transaction.
If the Merchant has paid BA back in full without any missed payments, Merchant will be entitled to a rebate of four (4) payments.

**MISCELLANEOUS.** BA is not responsible for any fees charged by Merchant's bank as the result of credits or debits initiated under this Authorization Agreement. The origination of ACH debits and credits to the Designated Checking Account must comply with applicable provisions of state and federal law, and the rules and operating guidelines of NACHA (formerly known as the National Automated Clearing House Association). Merchant agrees to be bound by the ACH Rules as set forth by NACHA. This Authorization Agreement is to remain in full force and effect until BA has received written notification from Merchant at the address set forth below at least 5 banking days prior of its termination to afford BA a reasonable opportunity to act on it. The individual signing below on behalf of Merchant certifies that he/she is an authorized signer on the Designated Checking Account. Merchant will not dispute any ACH transaction initiated pursuant to this Authorization Agreement, provided the transaction corresponds to the terms of this Authorization Agreement. Merchant requests the financial institution that holds the Designated Checking Account to honor all ACH entries initiated in accordance with this Authorization Agreement.

| ACCEPTED AND AGREED | ACCEPTED AND AGREED |
|---|---|
| **FOR THE MERCHANT (#1)** | **FOR THE OWNER/GUARANTOR (#1)** |
| _Barry Halajian_ | _Barry Halajian_ |
| **(Signature)** | **(Signature)** |
| BARRY S. HALAJIAN | BARRY S. HALAJIAN |
| **(Name)** | **(Name)** |
| **(Title)** | **(Title)** |
| ACCEPTED AND AGREED | ACCEPTED AND AGREED |
| **FOR THE MERCHANT (#2)** | **FOR THE OWNER/GUARANTOR (#2)** |
| **(Signature)** | **(Signature)** |
| **(Name)** | **(Name)** |
| **(Title)** | **(Title)** |

BAY ADVANCE- #9                                    Merchant Initials **BH**

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## Bank Login Information

Dear Merchant,

Thank you for accepting this offer from BA. We look   forward to being your funding partner for as long as you need.

**Daily ACH Program:**

BA, will require viewing access s to your bank account, each business day, in order to verify the amount of your daily payment. Please be assured that we carefully safeguard your confidential information, and only essential personnel will have access to it.

BA will also require viewing access to your bank account, prior to funding, as part of our underwriting process.

Please fill out the form below with the information necessary to access your account.

* Be sure to indicate capital or lower-case letters.

Name of Bank: _____Chase_____

Bank portal website: _____Chase.com_____

Username: _____Barrys56chevey_____

Password: _____GE67cr132Size4#_____

Security Question / Answer 1: _____N/A_____

Security Question / Answer 2: _____N/A_____

Security Question / Answer 3: _____N/A_____

Any other information necessary to access your account: _____No_____

ACCEPTED AND AGREED

**FOR THE MERCHANT (#1)**          *Barry Huynir*

_____
(Signature)

BARRY S. HALAJIAN_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE MERCHANT (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

BAY ADVANCE- #10

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#1)**          *Barry Huynir*

_____
(Signature)

BARRY S. HALAJIAN_____
(Name)

_____
(Title)

ACCEPTED AND AGREED

**FOR THE OWNER/GUARANTOR (#2)**

_____
(Signature)

_____
(Name)

_____
(Title)

Merchant Initial **BH**_____

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

## Emergency Contacts

Four valid emergency contacts are required to receive funding. Contacts will be verified.

Name:_____
Relation:_____
Phone Number:_____
Email Address:_____

Name:_____
Relation:_____
Phone Number:_____
Email Address:_____

Name:_____
Relation:_____
Phone Number:_____
Email Address:_____

Name:_____
Relation:_____
Phone Number:_____
Email Address:_____

BAY ADVANCE- #11

Merchant Initials:_____

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

**X Dropbox** Sign                                           Audit trail

| | |
|---|---|
| **Title** | BAY ADVANCE - BARRY S HALAJIAN |
| **File name** | BAY ADVANCE - BARRY STUART HALAJIAN.docx |
| **Document ID** | 6401d121b3c9429127527c0a23ffde4b6c87ff0d |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ⊛ Signed |

## Document History

| | | |
|---|---|---|
| ⟲ **SENT** | **05 / 18 / 2023** 20:45:51 UTC | Sent for signature to BARRY S. HALAJIAN (ieds@sbcglobal.net) from admin@bayadvancellc.com IP: 175.176.87.59 |
| ◎ **VIEWED** | **05 / 18 / 2023** 20:49:29 UTC | Viewed by BARRY S. HALAJIAN (ieds@sbcglobal.net) IP: 73.66.211.166 |
| ⊭ **SIGNED** | **05 / 18 / 2023** 20:52:05 UTC | Signed by BARRY S. HALAJIAN (ieds@sbcglobal.net) IP: 73.66.211.166 |
| ⊘ **COMPLETED** | **05 / 18 / 2023** 20:52:05 UTC | The document has been completed. |

# EXHIBIT E





+1 (559) 353-4092

Yes

> Please confirm you would like to proceed with the merchant agreement between Bay Advance and Industrial Electric Company for 60k in which you executed 5/23/23. The breakdown of the agreement is as follows: 60k Purchase Price of receivables  / Gross Funding 89,940.00 Purchased amount / payback of receivables
> Net Funding Amount = 42,000.00
> The daily remittance payment in amount of 3,000.00 will be debited from your account Monday – Friday
>
> Please confirm yes if you would like to proceed and wire will be initiated and released immediately.
> If there is any question or misunderstanding then please reply with your questions or concerns.
> Thank you we are awaiting your reply

Yes 👍

  

# EXHIBIT F

## $60,000 - Funding for the Business

From:   Alex Rose (alex@bayadvancellc.com)

To:     ieds@sbcglobal.net

Date:   Thursday, May 18, 2023 at 12:34 PM PDT


Barry,

As per our conversation, please provide a copy of your voided check and driver's license. Once received I'll request for the funding department to draft up the agreement and have it sent to your email shortly after.

Regards,

Alex Rose
Funding Director
Business: (631)-590-8911
Alex@bayadvancellc.com

# EXHIBIT G

# BAY ADVANCE

## FUTURE RECEIPTS SALE AGREEMENT

This FUTURE RECEIPTS SALE AGREEMENT ("Agreement") dated_____5/18/2023_____between BAY ADVANCE having a place of business in Connecticut ("**BA**") and the Merchant(s) listed below (**Merchant**")

**Merchant Information:**

| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
|---|---|
| Entity Type: SOLE PROP | EIN: 94-2782591 |
| State of Incorporation: CA | Phone Number: |
| Physical Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | Mailing Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 |

**Owner/Guarantor Information:**

| Owner 1/Guarantor 1 | | |
|---|---|---|
| Full Name: BARRY S. HALAJIAN | Cell Phone: | Social Security #: 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 |
| Home Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | City/State: FRESNO, CA | Zip Code: 93726 |
| Ownership %: | Email: **ieds@sbcglobal.net** | DOB: 09/29/1959 |
| Owner 2/Guarantor 2 | | |
| Full Name: | Cell Phone: | Social Security #: |
| Home Address: | City/State: | Zip Code: |
| Ownership %: | Email: | DOB: |

**Purchase Detail:**

| | | |
|---|---|---|
| Purchased Amount | $ 89,940.00 | The dollar value of future receipts. |
| Purchase Price | $ 60,000.00 | The dollar price the purchaser is paying for the amount sold. |
| Purchased Percent | 45% | Percentage of Future Receipts to be remitted to Purchaser |
| Processing Fee | UP TO 75% | The dollar amount to be deducted from Purchase Price for underwriting fees, broker fees, and related expenses. |
| Remittance Transaction Fee | $175.00 | The dollar amount to be deducted from Purchase Price for the transaction of ACH Remittance. |
| UCC Fee | $99.00 | The dollar amount to be deducted from Purchase Price for the UCC processing fee. |
| Wire Transaction Fee | $50.00 | Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH |
| **Disbursement Amount to Merchant** | | Net of fees, discount, and direct payments |
| Remittance Choice | ACH | Remittance can occur via ACH, Bank Transfer, Bank Wire. |
| Payment Frequency | Daily | Daily (Each "Business Day" Monday through Friday excluding Federal Reserve Holidays) or Weekly |
| Remittance | $ 3,000.00 | Remittance amount of Future Receipts to be collected according to the Payment Frequency. |

THIS WAS THE CONTRACT THAT I SIGNED WITH THE BLANKS SPACE

**Default Details:**

| | | |
|---|---|---|
| NSF Fee (Standard) | $35.00 | Each returned payment without notice is a default. |
| Rejected ACH/Blocked ACH/Default Fee | $5,000.00 | When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank account cutting us from our collections. |
| Attorney's Fee | TBD | BA shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal.  BA shall also be permitted to collect its reasonably attorney's fees if BA refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor |
| Stacking Fee | $10,000.00 | If the Merchant takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 of the purchased amount will be added to the Merchants current balance. |

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d

# EXHIBIT "H"

# BAY ADVANCE

## FUTURE RECEIPTS SALE AGREEMENT

This FUTURE RECEIPTS SALE AGREEMENT ("Agreement") dated ___5/18/2023___ _____ between BAY ADVANCE having a place of business in Connecticut ("BA") and the Merchant(s) listed below (**Merchant**")

### Merchant Information:

| | |
|---|---|
| Merchant's Legal Name: BARRY STUART HALAJIAN DBA INDUSTRIAL ELECTRIC COMPANY | D/B/A: INDUSTRIAL ELECTRIC COMPANY |
| Entity Type: SOLE PROP | EIN: 94-2782591 |
| State of Incorporation: CA | Phone Number: |
| Physical Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | Mailing Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 |

### Owner/Guarantor Information:

**Owner 1/Guarantor 1**

| | | |
|---|---|---|
| Full Name: BARRY S. HALAJIAN | Cell Phone: | Social Security #: 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 |
| Home Address: 4974 FRESNO ST APT 290, FRESNO CA 93726 | City/State: FRESNO, CA | Zip Code: 93726 |
| Ownership %: | Email: ieds@sbcglobal.net | DOB: 09/29/1959 |

**Owner 2/Guarantor 2**

| | | |
|---|---|---|
| Full Name: | Cell Phone: | Social Security #: |
| Home Address: | City/State: | Zip Code: |
| Ownership %: | Email: | DOB: |

### Purchase Detail:

| | | |
|---|---|---|
| Purchased Amount | $ 89,940.00 | The dollar value of future receipts. |
| Purchase Price | $ 60,000.00 | The dollar price the purchaser is paying for the amount sold. |
| Purchased Percent | 45% | Percentage of Future Receipts to be remitted to Purchaser |
| Processing Fee | UP TO 75% | The dollar amount to be deducted from Purchase Price for underwriting fees, broker fees, and related expenses. |
| Remittance Transaction Fee | $175.00 | The dollar amount to be deducted from Purchase Price for the transaction of ACH Remittance. |
| UCC Fee | $99.00 | The dollar amount to be deducted from Purchase Price for the UCC processing fee. |
| Wire Transaction Fee | $50.00 | Each Merchant shall receive their funding electronically to their designated bank account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH |
| **Disbursement Amount to Merchant** | **$42,000.00** | **Net of fees, discount, and direct payments** |
| Remittance Choice | ACH | Remittance can occur via ACH, Bank Transfer, Bank Wire. |
| Payment Frequency | Daily | Daily (Each "Business Day" Monday through Friday excluding Federal Reserve Holidays) or Weekly |
| Remittance | $ 3,000.00 | Remittance amount of Future Receipts to be collected according to the Payment Frequency. |

### Default Details:

| | | |
|---|---|---|
| NSF Fee (Standard) | $35.00 | Each returned payment without notice is a default. |
| Rejected ACH/Blocked ACH/Default Fee | $5,000.00 | When Merchant BLOCKS Account from our Debit ACH, or when Merchant directs the bank to reject our Debit ACH, which places them in default (per contract). When Merchant changes bank account cutting us from our collections. |
| Attorney's Fee | TBD | BA shall be entitled to its reasonable attorney's fees and costs in addition to any other relief, at law or equity, awarded by a court of competent jurisdiction if it prevails on any claim, causes of action and/or defense, including an appeal. BA shall also be permitted to collect its reasonably attorney's fees if BA refers this Agreement to legal counsel, pre-judgment, to collect any balance due resulting from a breach of this Agreement by Merchant or Guarantor |
| Stacking Fee | $10,000.00 | If the Merchant takes any further financing from any other finance /factoring company a minimum fee of $10,000.00 of the purchased amount will be added to the Merchants current balance. |

Doc ID: 6401d121b3c9429127527c0a23ffde4b6c87ff0d